## Case No. 16,396.

### UNITED STATES v. STEVENSON.

[3 Ben. 119; [1] 9 Int. Rev. Rec. 49; 10 Int. Rev. Rec. 140.]

District Court, S. D. New York. Jan. 12, 1869.
Circuit Court, S. D. New York. Oct., 1869.

SEIZURE OF ENEMY PROPERTY ON LAND—FORFEITURE—ACTS OF JULY 13 AND AUGUST 6, 1861, AND MAY 20 AND JULY 17, 1862.

1. The seizure of enemy property as prize of war on land is not authorized by the law of nations, and can only be upheld by the municipal laws of the nation which seeks to enforce the forfeiture.

2. Where a statute denounces a forfeiture of property as the penalty for an offence, and does not say that the property or its value is forfeited, the forfeiture takes place at the time the offence was committed, and operates as a statutory transfer of the right of property to the government.

3. The act of July 13, 1861 (12 Stat. 255), was not a mere temporary act. Forfeitures incurred under it during the continuance of hostilities might be enforced afterwards.

4. The 5th and 9th sections of that act must be construed together, and the forfeiture declared in the 5th section can be enforced only by a seizure of the property.

5. The act of August 6, 1861 (12 Stat. 319), May 20, 1862 (12 Stat. 404), and July 17, 1862 (12 Stat. 589), are subject to the same construction, and forfeitures under them can only be enforced by a seizure of the property.

This suit was a suit in trover brought by the government against the defendant [Vernon K. Stevenson], to recover the value of 1,000 bales of cotton, alleged to have belonged to the government and to have been converted by the defendant to his own use. The ground taken by the government was, that the defendant, being president of the Nashville and Chattanooga Railroad, came into possession of the cotton, which had belonged to the Confederate government, and thus, by right of forfeiture, to the government of the United States, and that he brought the cotton to New York and there disposed of it and kept the proceeds.[2]

BLATCHFORD, District Judge (charging jury). The right of recovery, in this case, on the part of the government, rests upon municipal statutes, because the action, although not a suit in rem, following a seizure of property on land, is sought to be made equivalent to such a suit. The case, therefore, does not fall within the class of suits which follow captures of property on the sea, jure belli, under the law of prize. The law in regard to captures of property on land, which is claimed to be forfeited to the government under the operation of the rules of war, has been settled by

[1] [Reported by Robert D. Benedict Esq., and here reprinted by permission.]

[2] An attachment was issued at the beginning of the suit, under which real and personal estate belonging to the defendant was seized. After the trial of the cause, a motion was made to dissolve the attachment. Judge Blatchford's decision, denying the motion, is reported in [Case No. 16,395].

the courts of the United States, by repeated adjudications; and the government must recover, if at all, in this case, precisely as if it had now under seizure the cotton in question. The government claims that the defendant has taken the cotton and disposed of it to his own use, and that it has the same right to maintain this action of trover against the defendant, for the conversion of the cotton, as it would have had to maintain a suit in rem against the cotton, or as it would have had to maintain a suit against the defendant for the conversion of the cotton, if, after a decree of condemnation of the cotton, in a suit in rem against it, and before a sale of it, the defendant had got possession of it and converted it to his own use.

As early as the year 1814, in the case of Brown v. U. S., 8 Cranch [12 U. S.] 110, it was held by the supreme court of the United States, that the seizure of enemy property as prize of war, on land, jure belli, is not authorized by the law of nations, and can only be upheld by the municipal laws of the nation which seeks to enforce the forfeiture. That decision and the doctrine of it were cited and approved by Mr. Justice Nelson, in the circuit court of the United States for this district, in May, 1865, in the case of U. S. v. 1756 Shares of Capital Stock [Case No. 15,961]. That was a suit in rem, prosecuted under the confiscation acts of August 6, 1861 (12 Stat. 319), and July 17, 1862 (12 Stat. 589). In his opinion in that case, Mr. Justice Nelson, speaking of those acts, remarks, that they expressly provide that the proceedings under them shall conform to the proceedings in admiralty and revenue cases; and the conclusion he draws, and it is one which applies to all the confiscation acts relied on in this case, from the act of 1861 down, is, that these acts are nothing but an extension, by act of congress, to enemy property captured on land, of the rule which, according to international law, had always been applied to enemy property captured at sea, and that the same rules must be applied in both cases. It necessarily follows, that the right which the United States are seeking to enforce in this suit, and the rights which they would seek to enforce by a suit in rem, if they had seized this cotton under these laws, are rights which rest wholly upon statute law.

It has been held by the supreme court of the United States, in the case of The Reform, 3 Wall. [70 U. S.] 617, that the act of July 13, 1861 (12 Stat. 255), which is one of the acts on which the government relies for a recovery in this case, was not a mere temporary act; and that, although the restrictions upon commercial intercourse prescribed by that act were limited in duration to the period of the existence of hostilities, still, forfeitures incurred under it during the continuance of hostilities may be enforced afterwards. Therefore, in a proper case, the government could now enforce a forfeiture incurred by the defendant in respect to property, notwithstanding the proclamations of the president in regard to the ces-

sation of hostilities. But the difficulty in the present case lies here, that the government has failed to prove the first material allegation in the information; and that is, that they are entitled to the possession of this cotton in such a manner that .they have a right to enforce that right of possession in this action.

The 5th section of the act of July 13th, 1861, declares that all property in transit to or from any insurrectionary state or section shall be forfeited to the United States. It was held in one case by Chief Justice Taney, in the Maryland district (U. S. v. 2,000 Bushels of Wheat, cited in U. S. v. The Francis Hatch [Case No. 15,158]), that the proper interpretation of that 5th section is, that no property can be condemned under it unless such property be actually seized while in such transit. But, without passing upon that point, I am entirely satisfied (notwithstanding the declaration, in the 5th section of the act, that, for the offence defined therein, the property shall be forfeited to the United States), that, inasmuch as the title of the United States must be based wholly upon the statute, the whole statute must be construed together. The 9th section must be construed in connection with the 5th section. The 9th section provides, "that proceedings on seizures for forfeitures under this act may be pursued in the courts of the United States in any district into which the property so seized may be taken and proceedings instituted;. and such courts shall have and entertain as full jurisdiction over the same as if the seizure was made in that district." My view of this statute is,. that it clearly contemplates that the forfeiture declared in the 5th section is to be enforced only by a seizure of the property; and that such forfeiture cannot be enforced in any other manner. Inasmuch as the whole right is statutory, if congress has seen fit to limit the statutory right to a forfeiture to be enforced only by a seizure of the property, the United States are so limited; and, inasmuch as that is their only right, if they are unable to seize the property, their right does not come into being. but remains an imperfect right. Congress has not seen fit to go any farther than to say: "You shall have this forfeiture if you seize the property." But if, for any reason, whether from the act of the defendant himself, or from any cause whatever, the government cannot seize the property, it cannot enforce the forfeiture.

This view is entirely consistent with the decisions that have been referred to by the counsel for the government, in reference to the time when a forfeiture declared by statute in favor of the government takes effect. The general language of all those decisions is, that where a statute denounces a forfeiture of property, as the penalty for the commission of an offence, if the denunciation is in direct terms, and not in the alternative, that is, if the statute does not say that. the forfeiture shall be of the property or its value, the forfeiture takes place at the time the offence was committed, and

operates as a statutory transfer of the right of property to the government. But, in every one of the cases cited, and in all the cases on the subject, in the courts of the United States, which have fallen under my observation, in the first place, the proceeding was in rem, and, in the second place, the question always came up upon the point as to whether, in such proceeding in rem, the title of the government to the property, and to a decree condemning it as forfeited, could be cut off by reason of the intervening, after the commission of the offence, of the title of a bona fide purchaser. It is only in respect to such a question that the decisions have been made. The principle is a sound one, unquestionably, and the whole subject has been fully considered in an opinion given by the district judge of the district of Kentucky, (Judge Ballard,) in the case of U. S. v. 56 Barrels of Whiskey [Case No. 15,095]. In that case, which was a suit in rem for a forfeiture of whiskey, a person claimed to be a bona fide purchaser of the whiskey, and that his purchase before prosecution, though after the commission of the offence, cut off the title of the government; but the court decided in favor of the government and against the claimant. In the case of Caldwell v. U. S., 8 How. [49 U. S.] 366, which is one of the leading cases on the subject, the opinion of the court was delivered by Mr. Justice Wayne, and all that he says on the point must be taken together. He says: "The forfeiture is the statutory transfer of right to the goods at the time the offence is committed. If this was not so, the transgressor, against whom, of course, the penalty is directed, would often escape punishment, and triumph in the cleverness of the contrivance by which he has violated the law. The title of the United States to the goods forfeited is not consummated until after judicial condemnation; but the right to them relates backward to the time the offence was committed, so as to avoid all intermediate sales of them between the commission of the offence and condemnation." That decision cannot be considered as going any farther than the question then before the court; and it is, in my judgment, contrary to principle and precedent to hold, that the United States can enforce a right of property, in a suit of the kind now on trial before this court, by claiming that the forfeiture, solely as between themselves and the defendant, was complete and perfect at the time of the commission of the offence, without any judicial proceeding to enforce such forfeiture.

But, even if the rule could be different under some statutes, I do not think it could be different under this statute of 1861, because, the forfeiture provided for by the 5th section of that act, taken in connection with the 9th section, is a forfeiture that can be enforced only by a seizure of the property.

I now pass to the act of May 20, 1862 (12

Stat. 404). Even if the regulations of the secretary of the treasury, made under the acts of 1861 and 1862 and other acts are to be considered as matters of which the court can take judicial notice, because they are expressly referred to by their dates, and adopted, in the third section of the act of July 2, 1864 (13 Stat. 376), and even assuming that this cotton would have been forfeitable by virtue of regulations made by the secretary of the treasury in pursuance of the act of 1862, still that act is subject to the same construction as the act of 1861; and, although the 3d section of that act declares that property which shall be transported in violation of the act, or of any regulations of the secretary of the treasury established in pursuance thereof, shall be forfeited to the United States, yet the 4th section of the act says, that "the proceedings for the penalties and foreitures accruing under this act" (covering those accruing under regulations to be established by the secretary of the treasury, as well as those accruing under the act itself), "may be pursued * * * in the modes prescribed by the 8th and 9th sections of the act of July 13th, 1861, to which this act is supplementary." Therefore, in this respect, the construction of the act of 1862 must be the same as that of the act of 1861. The proceedings for a forfeiture under the act of 1862 must be pursued in the manner prescribed by the 9th section of the act of 1861, that is, by seizure, and in no other way.

The next statute is the act of August 6th, 1861, before referred to. That act provides, that if any person, during an insurrection, after the president shall have declared by proclamation that there is an insurrection, shall acquire, sell, or give any property to aid the insurrection, the president shall cause such property to be seized, confiscated, and condemned, and that the condemnation shall take place in the district or circuit court of the United States having jurisdiction of the amount, or in admiralty, in any district in which it may be seized, or into which it may be taken and proceedings first instituted. The statute does not declare any forfeiture at all. It merely provides that the president may cause any property to be seized; and, unless he causes it to be seized, the statute does not cover it at all. Therefore, it is plain that there can be no suit or recovery founded on that act, unless the property is first seized.

The remaining act is the act of July 17th, 1862, before referred to, the 5th section of which provides, that "to insure the speedy termination of the present rebellion, it shall be the duty of the president of the United States to cause the seizure of all the estate and property, money, stocks, credits, and effects of the persons hereinafter named in this section," (including persons thereafter acting as officers of the army or navy of the rebels in arms against the government of the United States,) "and to apply and use the same and the proceeds thereof for the support of the army of the United States." No forfeiture is declared by that act, in any other language. It merely states that the president may seize the property and apply it to the support of the army of the United States.

As it does not appear, in this case, that any of the cotton was seized, these views of the various statutes relied on by the government seem to me to dispose of this case. They lie at the very threshold of it, without the examination of any other questions.

The theory upon which the information in this case proceeded when it was filed, if that theory can be judged of from the information and the affidavit appended to it—for, the information refers to and embodies the affidavit as a part of the information, and the affidavit refers to and embodies the information as a part of the affidavit—is, that this cotton was the property of the public authorities concerned in the rebellion, and that the United States, by virtue of their sovereign right, became the owners of the cotton, eo instanti, at the very moment the rebel authorities claimed to own it. Such a right in the United States, if it existed in this case, would not at all depend upon any of the statutes which have been cited; and, if it were shown, in point of fact, by the testimony in this case, that this cotton belonged to the acting public authorities who were carrying on the rebellion, and calling themselves the Confederate government, the right of the United States, by virtue of their being the sovereign power, and by reason of such acting public authorities being rebel authorities, would come into operation over the property, by virtue of the constitution of the United States, and of their sovereign authority, irrespective of any statute, so as to make the subsequent conversion of the property by the defendant a tort, as against the immediate right of possession of the United States. But there is no such testimony in the case. The evidence is quite clear that none of the cotton, for the proceeds of which the government sues in this case, was the property of this so-called "Confederate Government," or of any of its subordinate governments acting in rebellion and hostility to the United States.

Therefore, as I before remarked, the right which lies at the threshold of the claim of the government to recover in this case, being a right resting wholly on the statute, and such right not being supported by any statute, even conceding all the facts to be as shown by the government, it is the duty of the court to instruct you, upon the facts and the law, that the government cannot recover, and that the defendant is entitled to your verdict. I should hesitate so to direct you in a case like this, if I were not entirely satisfied that the government cannot recover in it under any circumstances. I, there-

fore, direct you to find a verdict for the defendant.

The jury, under the foregoing instructions, rendered a verdict for the defendant.

The case was taken, by writ of error, to the circuit court, which, in October, 1869, affirmed the judgment. The following was the opinion of that court:

NELSON, Circuit Justice. This is a writ of error to the United States district court of the Southern district of New York. The suit is an action of trover brought by the United States against Stevenson, to recover the value of a large quantity of cotton, which, it is alleged, belonged to the plaintiff, and had been converted by the defendant to his own use. The cause was tried before a jury, and, on the trial, it appeared that the defendant, being a resident and citizen of Tennessee when the recent civil war broke out, remained in the state, and took part with the insurgent states, and was the president of the Nashville and Chattanooga Railroad, and ran the road in their service; and that, while thus engaged, he bought cotton within those states, and shipped it, with the knowledge and assent of the so-called "Confederate States," from Wilmington, North Carolina, to foreign ports, in violation of the United States blockade. It also appeared that, as the Union army approached Tennessee, and Nashville, he removed cotton that he had bought, and cotton also that belonged to others, further into the interior, to prevent the same from being captured by the forces of the United States. There is no proof in the case, that any part of the cotton was ever in the possession of the United States, or that they ever had any title to the same, or that it ever belonged to the so-called "Confederate States," but, on the contrary, it was purchased in the Confederate States, by the defendant, and shipped by him abroad, in violation of the existing blockade, and sold abroad, or sold within the said states. The court below, at the close of the testimony, being of opinion that no case was made out on the part of the plaintiffs, directed a verdict for the defendant.

The act of July 13th, 1861 (section 5), made it lawful for the president of the United States, where a state of insurrection existed, to declare it by proclamation, and provided that, thereupon, all commercial intercourse by and between the same, and the citizens thereof, and the citizens of the rest of the United States, should cease, and be unlawful, &c., and the goods, &c., coming from said state or section into other parts of the United States, &c., should be forfeited to the same. 12 Stat. p. 255. The act supplementary, passed May 20th, 1862, (12 Stat. p. 404,) section 3, confers on the secretary of the treasury power, upon satisfactory grounds of belief that the goods, &c., are intended for any place in the possession or under the control of the insurgents, in all cases where he may deem it expedient to do so, to require security that they will not be carried to such place, nor used to give aid or comfort to the insurgents; and provides that a transportation in violation of the act, or of the regulation, shall work a forfeiture.

The act of August 6, 1861 (12 Stat. p. 319, § 1), provides that, during the insurrection, goods purchased or sold with intent to use or employ the same, &c., in aiding or promoting the insurrection, shall be subject of prize and capture, and it is made the duty of the president to cause the same to be seized and confiscated.

The act of July 17, 1862 (12 Stat. p. 591, § 6), makes the property of persons engaged in rebellion, who will not return to their duty in sixty days after warning by proclamation of the president, subject to seizure, and it is made the duty of the president to seize, &c.

The only remaining act that is material to refer to is that of March 3, 1863, § 1. (12 Stat. p. 820,) which authorizes the appointment of agents to collect captured and abandoned property.

I need hardly say, that neither of these statutes, or any provision in them, has any bearing on the facts, as disclosed in the case, or affords any ground for an inference or conclusion that the cotton in question, sold and converted to his own use by the defendant, belonged to the United States. Certainly not, unless all the property of citizens or people in the Confederate States belonged to the United States during the war.

There is another branch of this case that furnished, perhaps, the grounds for its original institution, which, as has turned out in proof, has utterly failed. The original information, as it is called, went on the ground that the defendant had fraudulently converted the cotton to his own use, and that the proceeds were disposed of with intent to secrete the same, and defraud the government, and prayed for process of attachment against the property of the defendant. Thereupon process of attachment issued, and a large amount of real and personal estate was attached, and still remains under the said process. The affidavit upon which this process was issued is remarkable, when compared with the facts of the case, as proved before the jury. The affiant states, that he was the person who filed the information against the defendant, which was on the 17th of December, 1866; that 3,000 bales of the cotton, or thereabouts, being in the states of Georgia, Alabama, and Tennessee, were the property of the Confederate States, when the defendant took possession of it; that, in the summer of 1865, he transported the same to the city of New York, within the Southern district of New York, to be sold and disposed of at that city, and converted the cotton into money, the proceeds of which,

amounting to $1,000,000, or thereabouts, the defendant received, and has converted the same into real or personal estate in that city; that the cotton was brought into the state of New York from the insurrectionary states, in violation of the proclamation of the president, of the 16th of August, 1861, and of the acts of congress, (referring to them;) and that it was the property of the United States. It was upon this affidavit that the process of attachment was issued, which seems to have been in some way regarded as a seizure, not of the cotton, but of the real and personal estate of the defendant, as a substitute for the same; and yet, the case has been tried as a simple action of trover and conversion in personam.

The case, as tried in the court below, and as ruled by the learned judge, is a very simple and plain one, and, in every aspect in which it has been presented, on the testimony, can lead to but one result, and that is, that the United States showed no title to the property, or to the possession of it, which was indispensable to maintain this action.

As it is shown that the affidavit on which the process of attachment issued was wholly untrue and false, or mistaken, the process of attachment must be set aside and discharged. Instead of the cotton belonging to the Confederate States, it belonged to the defendant; and, instead of being shipped to New York in violation of the acts of congress, it was shipped from a Confederate port to a foreign country, in violation of the blockade of the port of Wilmington; but this fact could not change the title of the property, or work a forfeiture of the same to the United States, unless seized as prize of war.

The judgment below is affirmed, and the process of attachment is set aside and discharged.

[A motion had been made in the district court to discharge the attachment, but was denied. See Case No. 16,395.]