By the Court.—Freedman, J.
This action is sought to be sustained on the theory that the plaintiff *360 had no notice or knowledge of the proceedings instituted in the United States district court, which resulted in the decree of condemnation ; that said proceedings were founded upon alleged offenses on the part of one Ver. S. Moore of which the plaintiff was wholly innocent ; and that consequently the decree of the United States district court was made without jurisdiction and is void.
If that court had no jurisdiction to pronounce the decree at the time it was made, the decree could not become valid by the denial of the motion to open it, and such denial does not constitute res adjudicates, so as to bar this action.
As to the question of jurisdiction, it is true that want of jurisdiction renders void the judgment of any court, whether it be of superior or inferior, of general, limited, or local jurisdiction, or of record or not; and the bare recital of jurisdictional facts in the record of a judgment of any court, whether superior or inferior, of general or limited jurisdiction, is not conclusive, but only prima facie evidence of the facts recited; and a party against whom a judgment is offered, is not, by the bare fact of such recitals, estopped from showing by affirmative facts that they were untrue.
But the difficulty is to find and determine the conditions upon which the jurisdiction of the district courts of the United States in this class of cases depends.
When a statute prescribes that some fact must exist before jurisdiction can attach in any court, such fact must exist before there can be jurisdiction, and the court cannot acquire jurisdiction by erroneously deciding that the fact exists, and that it has'jurisdiction.
But where general jurisdiction is given to a court over any subject, and that jurisdiction depends, in a particular case, upon facts which must be brought before the court for its determination upon evidence, and *361 where it is required to act upon such evidence, its decision upon the question of its jurisdiction is conclusive until reversed, revoked, or vacated, so far as to protect its officers and all other innocent persons who act upon the faith of it.
Roderigas v. East River Savings Institution, per Earl, J., 63 N. Y. 460 (464), and cases there cited.
War gives to the sovereign the right to take the persons and confiscate the property of enemies wherever found. This rigid rule still exists, though the exercise of the right may have been more or less affected by the humane policy of modern times. The right to condemn and confiscate the property of enemies captured on the high seas, exists by the law of nations. But before the courts of the United States can condemn and confiscate, as a consequence of the declaration of war, any property of the enemy found on land at the commencement of hostilities, provision must first be made by law for that purpose. The right to enact such a law exists, and when the sovereign authority of the United States shall choose to bring it into operation, the judicial department must give effect to its will. But until that will shall be expressed, no power of condemnation can exist in any of the courts (Brown v. United States, 8 Cranch, 110).
The power of congress to enact laws for such a purpose has been reviewed and affirmed in the cas§ of Miller v. United States, 11 Wall. 268.
In the exercise of this power "congress enacted the act of August 6, 1861, entitled “An act to confiscate property used for insurrectionary purposesand the act of July 17, 1862, entitled, “ An act to suppress insurrection, to punish treason and rebellion, to seize and confiscate the property of rebels, and for other purposes.”
The act of 1861 applies only to property acquired with intent to use or employ the same, or to suffer the *362 same to be used or employed, in aiding or abetting •insurrection, or in resisting the laws ; and' the act of 1862, so far as it relates to the confiscation of property, applies only to the property of persons who thereafter might be guilty of acts of disloyalty or treason (Conrad v. Waples, U. S. Supreme Court, No. 122, October Term, 1877).
By these acts it was further provided that for the offenses therein set forth the property of the persons so offending should be condemned and forfeited to, and become the property of the United States, and that the district courts of the United States should have jurisdiction to carry out the purposes of said acts so as to secure the condemnation and sale, for the benefit of the United States, of the property thus liable to seizure, condemnation and sale.
For the purposes of the present appeal, it is immaterial whether the title of the offender is transferred to the United States by his guilty act, as has been held in United States v. Stevenson (3 Ben. 119), or pursuant to judicial sentence of condemnation, for in every case the property claimed must be seized and brought into court before it can be finally condemned and applied as directed by said acts.
The question then remains whether the jurisdiction of the courts Of the United States to entertain proceedings for condemnation, depends exclusively upon the fact of the commission of the offense, or whether it includes the general power to inquire and determine whether an offense has been committed, and to pronounce judgment according to the fact as it may be made to appear.
This question must be determined upon the construction of said acts and in accordance with the general legislative intent apparent from their enactment.
In addition to the provisions already referred to, the act of 1861 provides that all property liable to cap *363 ture under it, shall be lawful subject of prize and capture wherever found, that it shall be the duty of the President of the United States to cause the same to be seized, confiscated and condemned ; that the attorney - general or any district - attorney of the United States may institute the proceedings for condemnation, in which case they shall be wholly for the benefit of the United States; or any person may file an information with such attorney, in which case the proceedings shall be for the use of such informer and the United States in equal parts ; and that such prizes and capture shall be condemned in the district or circuit court of the United States having jurisdiction of the amount, or in admiralty in any district in which the same may be ■ seized, or into which they.may be taken and proceedings first instituted.
The act of 1862 makes it the duty of the President of the United States to cause all property liable to seizure and condemnation under said act, to be seized and the proceeds thereof to be applied for the support of the army of the United States (§ 5). It also provides that to secure the condemnation and sale of any such property, after the same shall have been seized, so that it may be made available for the purpose aforesaid, proceedings in rem shall-be instituted in the name of the United States in any district court thereof, within whose territorial jurisdiction the property, or any part thereof, may have been found, or into which the same, if movable, may have been first brought; that such proceedings shall conform, as nearly as may be, to proceedings in admiralty or revenue cases ; and that, if said property, whether real or personal, shall be found to have belonged to a person engaged in rebellion, or who has given aid or comfort thereto, the same shall be condemned as enemies’ property and become the property of the United States, and thereupon it may be disposed of as the court may decree (§ 7). It fur *364 ther provides that the said district courts shall have power to make such orders, establish such forms of decree and sale, and direct such deeds and conveyances to be executed and delivered by the marshals thereof, where real estate shall be the subject of sale, as shall fitly and efficiently effect the purposes of the act, &c., &c. (§8). And finally the said act confers upon the said court full power to institute proceedings, make orders and decrees, issue process, and do all other things necessary to carry the act into effect (§ M).
These provisions, taken together, and construed with reference to the purposes therein avowed and also expressed in the titles of the respective acts, it seems -to me, unmistakably show that the intention of congress was to provide not only a complete system for the capture and condemnation of property liable to be considered as enemies’ property, but also one which should be effective in times of great national peril and commotion, and for that purpose to invest the district courts of the United States with the general power to take cognizance of and inquire into all offenses under said acts. Their jurisdiction is not made to depend upon the fact of the commission of the offense, but embraces the power to hear and determine all cases arising under the statute; and if in any case it shall be found that the property brought before the court belongs to a person guilty of an offense under the said acts,- then it may be condemned as enemies’ property.
In the case at bar, all the proceedings and formalities required by the two acts of congress, and necessary to give the district court jurisdiction and render its decision binding, were had and complied with. The proceeding was in rem/ the property was brought before the court, after seizure by the marshal, a libel of information was filed, and a monition duly issued ; *365 all persons interested in the said property were cited, in general and special, as the law directs, to answer the matters alleged against it; and upon the marshal’s return of the monition, and proof of such notice, no one intervening, the decree of condemnation was made and entered. The court throughout acted according to its rules and course of practice adopted and promulgated for the disposition of such cases, and hence the decree of condemnation was made in the course of a judicial inquiry in a matter over which the court had jurisdiction. This being so, the decree of condemnation cannot be impeached in any other court. The case comes directly within the principle enforced by the court of appeals in Roderigas v. East River Savings Institution (63 N. Y. 460), and reaffirmed in the recent cases of Lange v. Benedict, reported 18 Alb. Law J. 11, and Hunt v. Hunt, referred to in 6 N. Y. Weekly Dig. 313.
These authorities being quite conclusive, it is not necessary to refer to the decisions of the supreme court of the United States, to the effect, that a decree of a court of competent jurisdiction on the point in issue before it, can only be reviewed by appeal, except in cases of fraud, and that, while unreversed, it is conclusive upon all other courts, and also that the judgment of a court of the United States, the subject matter of which is within its jurisdiction, cannot be impeached by a State court.
It therefore can make no difference that the libel of information filed in this case was not verified. It was filed by the district attorney of the United States for the southern district of Hew York in the discharge of his official duty, and under the responsibility of his official oath, and by the rules of the district court for said district, libels filed on behalf of the United States are excepted from the general requirement that libels praying an attachment in personam or in rem, or *366 demanding the answer of any party, must be verified by oath or affirmation. This point presents only a question of pleading, or, at most, one of regularity. It does not touch the question of jurisdiction.
Nor can it make any difference that the plaintiff was not actually served with process, and remained ignorant of the proceedings. Service was made in the method prescribed by law in such cases as a substitute for personal service, and this was equivalent to personal service. Similar seiwice is even sufficient in certain personal actions. Thus, in Hunt v. Hunt {supra), it was held that in an action for divorce a valid judgment in personam, so as to effect a dissolution of the marriage contract which shall be prevalent everywhere, may be rendered against a defendant not within the territorial jurisdiction during the progress of the suit, if that be the place of his citizenship and domicile, though process be served upon him only in some method prescribed by the laws of that jurisdiction as a, substitute for personal service, and though he has not voluntarily appeared. In cases like the one at bar, the statutes of the United States evidently contemplated the probable necessity of an absolute decree of condemnation against parties who, owing to their residence in distant and rebellious States, might have no opportunity to defend, and suitable provision was made for the contingency. The proceedings -are by action in rem, in which all parties interested have a right to appear pursuant to the monition issuing from the court. But no personal service or actual notice is necessary ; and finally it cannot avail the plaintiff that she is innocent of the alleged offense for which her property was condemned and sold. Assuming that her innocence has been fully established, and that the district court erred in condemning her stock and dividends, such error cannot be rectified by this court. Her remedy is by application to the court that made *367 the decree or by appeal. Her case, as made out, discloses great hardship, especially as she did apply for relief to the district court and the prayer of her petition was denied. But we have no discretion to set aside the decree of the former court by reason of commiseration for her. On the other hand, to sustain plaintiff s claim, even if it could be done, would entail equal hardship upoti the defendant. The bank in this case has acted solely under the compulsion of the law as pronounced by the district court, and for any other court to compel it, though without fault, to pay a second time, would be introducing a novel principle and a dangerous precedent.
For the same reasons the plaintiff cannot escape from the decree of the district court by insisting that the seizure by the marshal of her stock and the dividends accrued thereon, was not, while she had the actual possession of the certificates, such a manucaption of the property as was necessary to confer jurisdiction upon the court, and that consequently her title could not be changed by judicial sentence in the manner attempted. The act of 1862 applies in express terms to “all the estate and property, money, stocks, credits and effects ’ ’ of the offender (§ 5). Therefore, the questions relating to the sufficiency of the seizure and the liability of the property seized to condemnation, were questions to be determined by the district court according to its course and practice. If they were of a jurisdictional character, the court, in pronouncing judgment, of necessity decided in favor of its jurisdiction, and so, under the statutes referred to and already shown, it had the general power and jurisdiction to inquire into all offenses under said acts, its judgment, standing unreversed, must, under the decisions in Roderigas v. East River Savings Institution, and Hunt v. Hunt (supra), be held conclusive upon these as well as all other questions properly embraced therein. At any rate, the seizure, *368 as made, was followed up by the condemnation and sale of the property, the transfer of the stock on the books of the company, and the payment into court of the dividends now claimed, and for these reasons the plaintiff stands confronted not merely with a judicial, sentence on paper, but also with the results of the sentence as executed. Pelham v. Rose, 9 Wall. 103, is not in point. It was an action against a marshal for a false return. He had been commanded to attach a certain note and to detain the same in his custody. For the purpose of determining his liability upon a certain return made by him, it was held that the due and legal, service of the writ required him to take the note into his actual custody and control.
Holbrook v. New Jersey Zinc Co., 57 N. Y. 616, was decided upon the theory that in an action against a corporation by a bona fide purchaser for value of certain certificates of its stock, the corporation was estopped from repudiating the terms of transfer to which it had consented ujion the face of the certificates.
This decision was placed upon grounds of public policy. It turned mainly upon the facts of the case, and was in nowise controlled by the provisions of any statute. The present case, on the other hand, turns entirely upon statutory provisions which are clear and explicit in themselves, and call for their own enforcement in preference to any other principle of law, which but for the existence ©f the statute, might apply.
The judgment appealed from should be affirmed with costs.
Saneobd, J., concurred.