MARTHA D. RODERIGAS, Administratrix, etc., Respondent, *v.* THE EAST RIVER SAVINGS INSTITUTION, Appellant.

Under the provisions of the Revised Statutes (2 R. S., 74, §§ 23, 26), conferring upon surrogates jurisdiction over the subject of granting letters of administration, the inquiry by a surrogate as to the death of the person upon whose estate administration is applied for is judicial in its nature; the surrogate has jurisdiction to determine it upon sufficient evidence; and letters issued by him upon due proof, are conclusive evidence of the authority of the administrator to act until the order granting them is reversed on appeal, or the letters are revoked or vacated, so far at least as to protect innocent persons acting upon the faith of them. (CHURCH, Ch. J., ALLEN and FOLGER, JJ., dissenting.)

Where, therefore, letters of administration were issued upon the estate of D., upon due proof of his death, and defendant, upon demand and presentation of the letters, paid over in good faith to the administrator the amount of a deposit made by D., *held* (CHURCH, Ch. J., ALLEN and FOLGER, JJ., dissenting), that an action could not be maintained to recover the deposit, although it appeared that D. was not dead at the time said letters were issued.

(Argued December 10, 1875; decided December 21, 1875.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, affirming judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury.

This action was brought to recover a deposit made in defendant's bank by James Devine, plaintiff's intestate. The facts sufficiently appear in the opinion of EARL, J.

*S. P. Nash* for the appellant. The administratrix was authorized to demand the deposit of defendant, and her

receipt was a valid discharge. (2 R. S., 74 [m. p.], § 26 ; id., 80, § 57 ; id., 79, § 47 ; id., 78,. § 46 ; Wms. on Exrs., 492 ; *Prosser* v. *Wagner*, 1 C. B. [N. S.], 289 ; *Belden* v. *Meeker*, 47 N. Y., 307 ; *Rogers* v. *Rogers*, 3 Paige, 379 ; 1 Laws of 1870, p. 826 ; *Porter* v. *Purdy*, 29 N. Y., 106, 110 ; *Roborg* v. *Hammond*, 2 H. & G., 42 ; *Bolton* v. *Jacks*, 6 Robt. 166 ; 1 Wms. on Exrs. [Am. ed., 1859], 476 ; *Noel* v. *Wells*, 1 Lev., 235 ; 1 Sid., 359 ; 2 Kel., 337 ; *Allan* v. *Dundas*, 3 T. R., 125 ; *Sheldon* v. *Wright*, 5 N. Y., 497, 511.) The granting of administration upon the estate of a person supposed to be dead, is not a taking of his property without due process of law. (*Oppenheim* v. *De Wolf*, 3 Sandf. Ch., 570 ; 1 R. S., 749, § 6 ; 2 id., 139, § 6 ; *Cropsey* v. *McKinney*, 30 Barb., 47.)· The administration of estates is of the nature of proceedings *in rem.* (*Broderick's Will*, 21 Wall., 503, 509.) . The surrogate had jurisdiction, and if he decided amiss as to the evidence, his decision was erroneous, but it was not void. (*Miller* v. *Brinkerhoff*, 4 Den., 119 ; *Staples* v. *Fairchild*, 3 Comst., 41 ; *Skinnion* v. *Kelly*, 18 N. Y., 355 ; *Webber* v. *Shearman*, 6 Hill, 20, 29, 30 ; *Nat. Bk. of Chemung* v. *City of Elmira*, 53 N. Y., 49 ; *Dorwin* v. *Strickland*, 57 N. Y., 492 ; *Bell* v. *Pierce*, 51 id., 12.) Proof of residence, or locality of assets, or of death, properly presented, confers jurisdiction in the first instance, though the proof may turn out to be false, and the decision is conclusive in favor of innocent third parties. (2 R. S., 221, § 6 ; id., 74, § 26 ; 1 R. L., 445, § 5 ; *People* v. *Tracy*, 1 Den., 617 ; 1 Swab. & T., 6, 7, 11, 53 ; *Bumstead* v. *Read*, 31 Barb., 661 ; *Bolton* v. *Brewster*, 32 id., 389 ; *Monell* v. *Dennison*, 8 Abb., 401 ; · *Halcomb* v. *Phelps*, 16 Conn., 127 ; *Roborg* v. *Hammond*, 2 H. & G., 42 ; 31 Barb., 669 ; *Caujolle* v. *Ferrie*, 13 Wal., 465.)

*S. Jones* for the respondent. At common law, administration granted upon the estate of a person in life was wholly void, although granted by a court having full power and jurisdiction. (*Allen* v. *Dundas*, 3 T. R., 125 ; *Griffith* v. *Frazier*, 8 Cranch, 9 ; *Jochumsen* v. *Suf. Svgs. Bk.*, 3 Al.,

87.) Death must have occurred in fact, before a surrogate has jurisdiction to grant either letters testamentary or of administration. (Laws 1813, chap. 79, §§ 3, 5, p. 445; Laws 1837, chap. 460, p. 524; 1 Kent's Com. [5th ed.], 464.) Section 47 of 2 Revised Statutes, page 79, is simply declaratory, and does not protect sales made or acts done by administrators appointed over the estate of a living person. (*Prosser* v. *Wagner*, 1 C. B. [N. S.], 289; *Sheldon* v. *Wright*, 5 N. Y., 497.) Chapter 359, Laws of 1870, page 826, has not a retrospective effect. (Sedgw. on Stat. and Const. Law [ed. 1867], 202.) It is not in the power of the legislature or court to confer jurisdiction on a surrogate over the estate of living persons. (2 Kent's Com. [12th ed.], 319, 326, 386, 409; *Bloom* v. *Burdick*, 1 Hill, 139.) It was proper to set up the want of jurisdiction in the surrogate. (*Bolton* v. *Jacks*, 7 N. Y. Supr. C., 193–203; *Barton* v. *Winslow*, 12 Wend., 102; *Hurd* v. *Shipman*, 6 Barb., 625.) The Surrogate's Court is a court of peculiar, special and limited jurisdiction. (*People* v. *Corlies*, 1 Sand., 228; *People* v. *Barnes*, 12 Wend., 492; *In re Watson*, 3 Lans., 408: *Corwin* v. *Merritt*, 3 Barb., 341; 2 R. S., pt. 3, chap. 3, tit. 2, art. 1, § 1; *Paff* v. *Kinney*, 1 Brad., 1; Stat. at Large, 179, 229, 286.) The surrogate had no jurisdiction over the subject-matter. (2 R. S., pt. 2, chap. 6.)

EARL, J. On the 1st day of October, 1857, the intestate, James Devine, deposited with the defendant, a savings bank in the city of New York, the sum of $485, and soon thereafter went to the Island of Cuba with his wife, the present plaintiff, to reside, leaving his wife's mother, Isabella McNeil, residing in the city of New York. Neither James Devine nor his wife having returned to New York in April, 1869, Mrs. McNeil applied to the surrogate of New York for letters of administration upon his estate, upon sufficient formal proof that he had died intestate, leaving assets in the county of New York, and that his wife was also dead, and that she was a creditor; and in May, 1869, the surrogate granted letters

of administration to Mrs. McNeil upon his estate. The proceedings resulting in the letters of administration complied with the statutes upon the subject, and were all regular in form. After letters were issued to her she went to the savings bank, produced her letters and demanded and received the deposit, which had been made about twelve years before, with the accumulation of interest.

In May, 1872, the plaintiff returned from Cuba to New York, and then, for the first time, learned what her mother had done, and she applied to the surrogate for letters of administration upon her husband's estate upon allegations and proofs that he lived in Cuba until March, 1871, when he died intestate, and the surrogate revoked the letters which had been issued to Mrs. McNeil and granted letters to the plaintiff, who had again married.

The plaintiff then demanded the deposit of the defendant, with the accumulation of interest, and payment being refused she brought this action and recovered. The sole question for our consideration is, whether the payment to the first administratrix is a defence to this action.

It is claimed, on the part of the plaintiff, that the surrogate, in granting letters upon the estate of her husband, who was not then dead, acted wholly without jurisdiction, and that his proceedings in granting such letters were null and void. The question as to the effect of letters granted under such circumstances, so far as I can discover, has never been decided in this State, and is, in this case, for the first time before this court for consideration.

Surrogates' Courts are courts of limited and special jurisdiction, and yet their jurisdiction to grant administration upon the estates of deceased persons is general and exclusive. No other courts can act and discharge the same functions. Before their proceedings can have any validity or confer any authority, they must have jurisdiction to act, and this is true of all courts. No court, no matter how general its jurisdiction may be, which proceeds without jurisdiction in the particular case, can make a valid record, or confer any rights.

When a statute prescribes that some fact must exist before jurisdiction can attach in any court, such fact must exist before there can be jurisdiction, and the court cannot acquire jurisdiction by erroneously deciding that the fact exists, and that it has jurisdiction. But where general jurisdiction is given to a court over any subject, and that jurisdiction depends, in the particular case, upon facts which must be brought before the court for its determination upon evidence, and where it is required to act upon such evidence, its decision upon the question of its jurisdiction is conclusive until reversed, revoked or vacated, so far as to protect its officers and all other innocent persons who act upon the faith of it. (*Miller* v. *Brinkerhoff*, 4 Denio, 119; *Staples* v. *Fairchild*, 3 N. Y., 41; *People* v. *Sturtevant*, 9 id., 263; *Skinnion* v. *Kelley*, 18 id., 356; *Porter* v. *Purdy*, 29 id., 106; *Bumstead* v. *Read*, 31 Barb., 661; *Grignon's Lessee* v. *Astor*, 2 How. [U. S.], 319; *Holcomb* v. *Phelps*, 16 Conn., 127; *State* v. *Scott*, 1 Baily [Law R.], 294; *Roborg* v. *Hammond*, 2 Harris & Gill, 42; *Brittain* v. *Kinnaird*, 1 Brod. & Bing., 432.)

This rule as to the jurisdiction of officers and courts of limited and special jurisdiction has many illustrations in the cases cited. In *Staples* v. *Fairchild*, the rule is announced as follows: " Where certain facts are to be proved before a court or officer of special and limited jurisdiction as a ground for issuing process, and there is a *total* defect of evidence, the process will be void ; but where the proof has a legal tendency to make out a proper case, in all its parts, for the jurisdiction of the court or officer, although such proof may be slight and inconclusive, the process will be valid until set aside on a direct proceeding for that purpose. In one case the court acts without authority, in the other it only errs in judgment upon a question properly before it for adjudication. In the one case there is a defect of jurisdiction ; in the other there is only error of judgment." In *Porter* v. *Purdy*, the following language is used: " When, in special proceedings in courts or before officers of limited jurisdiction,

they are required to ascertain a particular fact, or to appoint persons to act in such proceedings, having particular qualifications or occupying some peculiar relation to the parties or the subject; such acts, when done, are in the nature of adjudications, which, if erroneous, must be corrected by a direct proceeding for that purpose; and if not so corrected, the subsequent proceedings which rest upon them are not affected, however erroneous such adjudications may be." In *Grignon's Lessee* v. *Astor*, where, by a law of Michigan, the County Courts have power, under certain circumstances, to order the sale of the real estate of a deceased person for the payment of debts and legacies, it was held that it was for that court to decide upon the existence of the facts which gave jurisdiction. In *Brittain* v. *Kinnaird*, Dallas, Ch. J., said: "The magistrate, it is urged, could not give himself jurisdiction by finding that to be a fact which did not exist, and he was bound to inquire as to the fact, and when he has inquired his conviction is conclusive of it."

The jurisdiction of Surrogates' Courts is defined, and their proceedings are regulated in our statutes. It is provided (2 R. S., 74, § 23) that "the surrogate of each county shall have sole and exclusive power, within the county for which he may be appointed, to grant letters of administration of the goods, chattels and credits of persons dying intestate in the following cases: 1. When an intestate, at or immediately previous to his death, was an inhabitant of the county of such surrogate, in whatever place such death may have happened. 2. When an intestate, not being an inhabitant of this State, shall die in the county of such surrogate, leaving assets therein. 3. When an intestate, not being an inhabitant of this State, shall die out of the State, leaving assets in the county of such surrogate, and in no other county. 4. When an intestate, not being an inhabitant of this State, shall die out of the State, not leaving assets therein, but assets of such intestate shall thereafter come into the county of such surrogate." It is further provided (§ 26) that "before any letters of administration shall be granted on the estate

of any person who shall have died intestate, the fact of such person's dying intestate shall be proved to the satisfaction of the surrogate, who shall examine the persons applying for such letters, on oath, touching the time, place and manner of the death, and whether or not the party. dying left any will; and he may also, in like manner, examine any other person, and may compel such person to attend as a witness for that purpose."

Under these provisions of the statute, the surrogate can no more institute a proceeding than the judge of any other court can institute a suit. He must wait until some person interested comes before him and, upon proper allegations, invokes the exercise of his jurisdiction; and then he has not the option to exercise it — he must exercise it. If he should refuse to act, he can be compelled to action by mandamus. While the statute gives him no jurisdiction to administer upon the estate of a living person, it imposes upon him the duty of inquiry as to the death of any person upon whose estate letters of administration are applied for, and the inquiry is a judicial inquiry. In discharging that duty, he may examine the person applying for letters and examine other witnesses, and in making such examination he is discharging his judicial functions and exercising his rightful jurisdiction. He can compel the attendance of witnesses before him by attachment; and false swearing would be perjury under our statutes upon that subject. When proof has been produced to his satisfaction, the other conditions of the statute being complied with, he must issue letters. The inquiry may be a difficult one. In many cases in the time of war, in the cases of absence upon the seas, or in foreign lands, and in the case of long absence unheard from, death cannot be proved with infallible certainty. Witnesses may be untruthful or mistaken, and the surrogate may thus be led into error, yet he must act; the statute makes it his duty to do so. He must decide upon the fact of death as best he can upon the evidence produced, exercising a judgment not infallible. Does he decide it at his peril? If he decides one

way, has he jurisdiction? And if he decides the other, has he no jurisdiction, and has he had none?

The claim is, that if death has not occurred, although the surrogate may have been satisfied by the clearest proof before him that death had occurred, his proceedings are a nullity for want of any jurisdiction to act. The consequence is that they furnish no protection to any one. The surrogate, who has in good faith ordered the sale of property and the distribution of money, may, in after years, be made liable for the whole estate. After many years it may be a question whether the intestate died in one month or in another month, earlier or later; and shall the jurisdiction of the surrogate and the validity of his proceedings and his protection against liability depend upon how this question may be determined by a jury upon disputed evidence? If the surrogate's proceedings are to be held null and void in case he errs as to the fact of death, the same result must follow if he errs as to the place of death, and as to the other facts mentioned in section 23, above cited. The fact of inhabitancy is frequently one difficult to be determined. It is one the surrogate must determine before he can issue letters, and its determination frequently depends upon disputed and fallible evidence; and if error as to the fact of death will leave him with no jurisdiction, so will error as to the fact of inhabitancy, and the consequence will be that in such a case his proceedings will give no protection to any one. A construction of the statutes which will lead to such results will make the laws as to the jurisdiction and proceedings of Surrogates' Courts difficult and hazardous to execute, and should not be tolerated unless the language used will admit of no other construction. I am of opinion, taking into consideration the various provisions of the statutes, that it was the intention of the legislature to confer upon Surrogates' Courts sole and exclusive jurisdiction over the subject of granting letters of administration; and as part of that jurisdiction to determine the facts, upon sufficient evidence, upon which their action must rest.

As early as 1792 (2 Greenl., 420), in the preamble to an

act concerning administrators, it is recited that "administrations had been frequently granted in this State, upon the mere suggestion of the party applying for the same, without due proof of the death of the person upon whose estate they were granted; and it has happened that administrations had been granted upon estates of persons who were then living and residing within this State; and administrations were frequently granted to persons in no wise related to the intestate, and who procured administration only with a view of appropriating the estate of the intestate to their own use, from which practice great inconveniences were likely to ensue," for remedy whereof it was enacted "that no letters of administration should thereafter be granted by the judge of probates or by any surrogate upon the estate, goods, chattels or credits of any person represented as having died intestate until due proof be made before the said judge or surrogate to his satisfaction that such person was dead and died intestate;" and substantially the same provision has been continued in the statutes to this day. This provision has made it the duty of the surrogate to institute a judicial inquiry into the facts of death and intestacy.

The statutes furnish a complete system. The surrogate is to take judicial action and determine the facts upon which his jurisdiction rests. If the case be a proper one he must issue letters, and then the letters are conclusive evidence of the authority of the administrator until reversed on appeal or revoked. (2 R. S., 80, § 56.) There is ample power to revoke or vacate letters in case they have been improperly granted; but in that case the acts of the administrator, done in good faith, are valid. (2 R. S., 80, § 47; Laws of 1837, chap. 460; *Flinn* v. *Chase*, 4 Denio, 85; *Kerr* v. *Kerr*, 41 N. Y., 272.) The administrator is required to give a bond that he will faithfully execute his trust and obey all orders of the surrogate touching the administration.

Taking all these provisions together it is apparent that it would be rare that a living person would be seriously harmed by administration upon his estate. But it is otherwise with

persons who deal with those who are thus clothed as adminis-
trators with the conclusive evidence of authority. This
defendant, when called upon by the first administrator, could
not resist payment, even if it had been practicable for it to
ascertain that Devine was then living; and whether he was
dead or alive was an issue which it would not have been per-
mitted to litigate. (*Prosser* v. *Wagner*, 87 Eng. Com. Law,
287, and note; *Belden* v. *Meeker*, 47 N. Y., 307; *Parhan* v.
*Moran*, 4 Hun, 717; Williams on Executors, 492.)

As my conclusion in this case is based upon the construc-
tion of the statutes of this State regulating the jurisdiction
and proceedings of Surrogates' Courts, decisions from other
States made under statutes not the same, can furnish us little
aid; but the following authorities tend somewhat to sustain
the conclusion I have reached: *Bumstead* v. *Read* (31 Barb.,
661); *Bolton* v. *Brewster* (32 id., 389); *Morrell* v. *Dennison*
(8 Abb., 401); *Holcomb* v. *Phelps* (16 Conn., 127); *Roborg*
v. *Hammond* (2 Harr. & Gill, 42); *Parhan* v. *Moran*
(*supra*).

There is a dictum adverse to my conclusion in *Allen* v.
*Dundas* (3 T. R., 125), and also in *Griffith* v. *Frasier* (8
Cranch, 9). In *Jochumsen* v. *Suffolk Savings Bank* (3 Allen,
87), the precise question involved in this case, of the payment
by the savings bank to an administrator of a depositor
appointed in his lifetime, was decided under the Massachusetts
statutes adversely to the views I have expressed. It was
held that the depositor could recover notwithstanding the
prior payment by the bank to the administrator. In *Bolton*
v. *Jacks* (6 Robertson's Sup. Ct. R., 166), there is a learned
discussion of the question of the jurisdiction of courts, and it
was there held that if a surrogate admitted to probate a will
of a testator not at the time of his death an inhabitant of his
county, he acted without jurisdiction, and that his proceeding
was void and could be attacked collaterally. I believe the
decision to be unsound in this respect.

A further criticism of cases to which our attention has been
called would not be useful. The question for our decision is

not free from doubt; a decision either way would be confronted with some authority and meet with some logical difficulties.

The judgment must be reversed and new trial granted, costs to abide event.

MILLER, J. The question to be determined in this case is, whether payment to an administrator, duly appointed by the surrogate as the law directs, of a person supposed to be dead, and who it subsequently appears was living at the time when letters were granted, is valid and conclusive against an administrator actually appointed after the decease of the intestate.

The right to letters of administration upon the estate of a deceased person is regulated by statute, and it is provided that " before any letters of administration shall be granted on the estate of any person who shall have died intestate, the fact of such person's dying intestate shall *be proved to the satisfaction* of the surrogate, who shall *examine the persons applying for such letters* on oath, touching the *time, place and manner of the death,* and whether or not the *party dying left any will,* and he may also, in like manner, examine any other person, and may compel such person to attend as a witness for that purpose." (2 R. S., 74, § 26.) The first part of the section cited makes provision for proof of death and intestacy in all cases to the satisfaction of the surrogate, and the latter portion for an examination as to the death, the circumstances connected therewith, and as to the fact whether the party dying left a will. The foundation upon which the proceedings rest are death and intestacy, and both of these must be satisfactorily established. Sufficient evidence must be furnished to afford a reasonable presumption and to satisfy the officer of these essential facts. When this is done according to the rules applicable to such cases, the surrogate is legally bound to grant the letters applied for. He is obligated to perform this duty, which is judicial in its character, and carries with

it the sanction of lawful authority. Such an application is a trial by the officer named of the fact of the death and intestacy of the person whose estate is sought to be administered upon. It is only to be made upon notice to the heirs at law and next of kin, or to such parties as the law directs; but when the proof is furnished as the law requires, the surrogate would not be authorized to disregard the evidence and deny the application. He has no alternative but to issue the letters demanded, and upon a refusal to do so, his decision would be the subject of review in an appellate tribunal and, if adverse to the plain proof, liable to reversal.

The statute also provides that letters "granted by any officer having jurisdiction, shall be conclusive evidence of the authority of the persons to whom the same may be granted, until the same shall be reversed on appeal or revoked, as in this chapter provided." (2 R. S., 80, § 56.) A subsequent provision declares that all sales made in good faith and all lawful acts done by administrators before notice of a will, or by executors or admininistrators who may be removed or superseded, etc., shall remain valid, and shall not be impeached by any subsequent revocation or superseding of the authority, etc. (2 R. S., 79, § 47.) The effect of these last provisions must depend upon the construction to be given to the section first cited as to the jurisdiction thereby acquired. They were evidently incorporated into the statute as part of an entire system, and may properly be considered together. The power and the duty of the surrogate to issue the letters upon satisfactory proof being furnished, is very clear, and the point to be determined is, whether he had no jurisdiction because it subsequently turned out that the alleged intestate was living. It is, no doubt, true that the surrogate has no jurisdiction to grant letters upon the estate of a living person; but a mode has been provided by law to test the fact whether a person is deceased, and as the legislature has enacted how this shall be done, and as the adjudication of a competent tribunal must stand when jurisdiction is acquired until reversed or superseded, as the law

requires, it is not apparent that such a determination is invalid and without jurisdiction. If the statute (§ 24, *supra*) had provided only for the issuing of letters, and not proceeded to state what proof was required, it might well be argued that no jurisdiction was acquired. So, if the surrogate had issued the letters without the requisite proof, the same result would follow. As, however, it does declare what proof must be given, it is difficult to determine how its effect can be avoided, because it afterward is made to appear that there was a mistake, or that the evidence was false and untrue. While this may furnish sufficient ground for issuing new letters superseding those first issued, it cannot render all which has been done under the first void and of no effect.

The legislature has conferred upon the surrogate of each county in the State sole and exclusive jurisdiction within the county to grant letters of administration of the personal estate of persons dying intestate. It has given authority and provided what proof shall be given upon an application for letters, and that the surrogate shall be satisfied before he grants the same. The power of the legislature to enact laws in reference to the administration of the estates of deceased persons cannot be doubted. And as incident to that power, it is entirely competent to authorize the tribunal constituted for such a purpose to pass upon the question of fact and determine, what it is often difficult to ascertain, whether the person whose estate is the subject of the application is living or dead. It must be determined by some tribunal before letters can be granted, and no satisfactory reason is given why the legislature should not declare by statutory enactment the mode in which it shall be done and the effect of such a determination. Cases arise where death takes place under circumstances where no living witness can be produced to testify to the fact. Parties disappear suddenly, with no trace of their whereabouts. They are sometimes lost, or supposed to be lost, at sea, or are so long absent from their homes and from communication with relatives and friends as to raise a presumption that death has taken

them away.  If the doctrine can be upheld that in such cases there is no power to confer jurisdiction to decide the question as to the death of such persons, then there would be no method existing to dispose absolutely of estates among those who are entitled to the same after death has been judicially determined.  And even after the avails are distributed among creditors by virtue of a judgment of a competent court, and payment of debts made by a legally authorized representative, the parties receiving the same may be compelled to refund, discharges of liens on real estate set aside to the detriment of innocent parties, the title to real estate sold by order of the surrogate vacated, and the most inextricable confusion ensue.  It cannot well be claimed that the legislature has not the power to provide safeguards for the protection of innocent third parties who act under the decree of a competent court, and thus remedy the evils which would flow from a want of such power.  Enactments to guard against such consequences cannot be regarded as divesting a person of his property, or interfering with rights, without due process of law, in violation of a constitutional right.  At most, such laws are but regulations in regard to a subject of general interest to the entire community, and are essential for the welfare of society, the promotion of justice, and the proper administration of estates.  In the case at bar it was no fault of the defendants that they paid the demand to an administrator duly qualified, and the blame, if any, rests with the party who, by a long absence, placed himself in a position where he was supposed to be dead.  At common law absentees, not heard from within seven years, are presumed to be dead.

The power of the legislature to pass laws providing for the vesting of estates in certain cases, upon the presumption of death, has been exercised for a long period of time, and never questioned.  (1 R. S., 749, § 6.)  Nor has it ever been doubted that a second marriage may be made valid by statute after an absence for a sufficient period of time.  (2 id., 139, § 6 ; *Cropsey* v. *McKinney*, 30 Barb., 47.)  The statutes

cited affect important rights, and if such cases can be provided for, then no valid reason exists why laws may not be enacted which will authorize the granting of administration upon the estates of persons proved to be dead, and whose voluntary absence has led to that conclusion. While a person is thus absent, creditors may attach his property, the State may dispose of his real estate by a sale for taxes, and the local authorities of a municipality by an assessment sale. Administration does not go as far as this, but simply changes the condition of his personal estate upon the proper security being given. The property is not confiscated, lost or misappropriated, but merely placed in the hands of a proper person to dispose of as the law directs. True, the security taken may become irresponsible, but this may happen in case of actual death, and hence is no argument against the power of an administrator appointed by a competent tribunal.

The letters were ample authority to receive the money and justify the payment; and had the defendant refused to pay, no defence could successfully be interposed to a suit brought. The decision of the surrogate, with sufficient evidence to establish death, was a judicial determination, and is a protection to all persons acting in good faith by virtue of the letters issued by him. In *Porter* v. *Purdy* (29 N. Y., 106), it was held, that the proceedings in courts, or before officers of limited jurisdiction, in regard to a particular fact, and which are in the nature of adjudications, if erroneous, must be corrected by a direct proceeding for that purpose, and if not so corrected, the subsequent proceedings which rest upon them are not affected, however erroneous such adjudications may be. This doctrine was applied to freeholders appointed to assess the expense of a sewer, and may be especially invoked in a case where a competent tribunal has acted judicially in reference to a subject by virtue of authority expressly conferred by law. (See, also, 2 Harr. & Gill, 42; *Noell* v. *Wells*, 1 Lev., 235.) In *Allan* v. *Dundas* (3 T. R., 125), it was held that payment of money to an executor

under a forged will was valid, although the probate was afterwards declared null, and administration granted. Some remarks are made to the effect that the ecclesiastical court has no jurisdiction during the life of a party. This doctrine, however, has no application to cases for which provision is made by a statutory enactment. *Sheldon* v. *Wright* (1 Seld., 497), is also relied upon by the plaintiff's counsel. It was an action of ejectment where title was acquired by virtue of proceedings in a Surrogate's Court. Some remarks are made in the opinion to the effect that the provisions of the Revised Laws of 1813, which differed considerably from the Revised Statutes in reference to Surrogates' Courts, are directory ; but the distinct question now raised was not presented, and therefore it cannot be considered as authoritative and controlling. *Bolton* v. *Jacks* (6 Robt., 166), involved the question as to the regularity of the probate of a will before a surrogate in a different county from that in which the testator died. The same question arose in *Merrill* v. *Dennison* (8 Abb., 401) ; *Bolton* v. *Brush* (id., 389), in each of which cases the decision was in conflict with *Bolton* v. *Jacks.*

In *Jochumsen* v. *Suffolk Savings Bank* (3 Allen, 87), the question now raised was distinctly presented upon facts almost precisely similar to the case now considered, and it was held that payment to the administrator of the living man was no defence to the suit brought by him. There was no statute in the State of Massachusetts making special provision in regard to the subject as there is here, and therefore it has no application. In reference to this case as well as other cases which uphold the same doctrine, it may also be remarked that they were disposed of without regard to any statutory regulation which conferred upon a tribunal organized for that purpose, within the jurisdiction where they were decided, authority to investigate, pass upon and decide the question, whether a person whose estate was sought to be administered upon was deceased. Such was the object and purpose of the statutes cited, and independent of any rule which may have otherwise prevailed where no tribunal was

vested with power to determine the question of death, they must be regarded as conclusive.

The judgment rendered must be reversed and a new trial granted, with costs to abide the event.

For reversal, RAPALLO, ANDREWS, MILLER and EARL, JJ. For affirmance, CHURCH, Ch. J., ALLEN and FOLGER, JJ. Judgment reversed.