NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—
August, 1879.

*In the matter of the estate of* SOLOMON D. CORDOVA,
*deceased.*

A Pennsylvania Trust Company was appointed the guardian of an infant
legatee by the Orphans' Court of Philadelphia, and upon a transcript
of the record of the Orphans' Court, was appointed guardian by the
N. Y. Surrogate's Court, without being required to give the usual bond.
By the laws of Pennsylvania, the Trust Company was relieved from
the necessity of giving bonds as guardian, its capital and property
being declared liable in case of default.—*Held,* that the guardianship
letters were properly granted; and *further,* that upon an application
by the Trust Company for payment of a part of the legacy, the
executors would be protected in such payment, although the transcript
from the Orphans' Court did not show that any bond or security had

been given, as required by chapter 59 of the Laws of 1870 ; that the provisions of the Pennsylvania statute being similar to those of this state in like cases supplied the place of such security, and complied with the spirit of the act of 1875, ch. 442.

MOTION by the Guarantee Trust and Safe Deposit Company of Philadelphia, as guardian of Flora Cohen de Leon, an infant legatee under the will of Solomon D. Cordova, to compel the executors to pay such guardian a portion of the infant's legacy.

The facts appear sufficiently in the opinion.

JOSEPH C. LEVI, *for guardian.*

S. RIKER, *for executor.*

THE SURROGATE.—The petitioner was appointed guardian of the infant by the Orphans' Court for the city and county of Philadelphia, and under chapter 59 of the Laws of 1870, as amended by chapter 442 of the Laws of 1875, was appointed guardian by this court, upon a transcript of the record of said orphan's court appointing it, and received letters on the proper record of said transcript. The executors, by their answer, admit the possession of sufficient assets to pay, on account of the legacy, $1,000, but claim that they would not be protected in such payment, because, by the transcript from the records of the court appointing petitioner, it does not appear that the *bond and security* were given as required by the act of 1875, and that the giving of such bond and security are jurisdictional prerequisites.

It is urged, by counsel for the petitioner, that the letters of guardianship issued by this court are a full protection to the executors, under the authority of Roderigas *v.* East River Savings Institution (63 *N. Y.*, 460). Judge EARL, at page 464, states the law upon this subject as

follows: "When a statute prescribes that some fact must exist before jurisdiction can attach in any court, such fact must exist before there can be jurisdiction, and the court cannot acquire jurisdiction by erroneously deciding that the fact exists, and that it has jurisdiction. But where general jurisdiction is given to a court over any subject, and that jurisdiction depends, in the particular case, upon facts which must be brought before the court for its determination upon evidence, and where it is required to act upon such evidence, its decision upon the question of its jurisdiction is conclusive until reversed, revoked or vacated, so far as to protect its officers and all other innocent persons who act upon the faith of it." This decision is not only the highest authority, but appears to be the only reasonable and practicable rule. My attention has been called to the re-trial of this case, and the decision of the General Term of the Superior Court of this city, where it was held that it was competent for the plaintiff therein to show, by parol, that the letters of administration issued in that case were void, because they were prepared by the administration clerk over the signature of the Surrogate, who, for convenience, had signed the same in blank; and that the letters thus issued did not protect the defendant, who innocently, and in good faith, paid to the person who appeared, by the letters, to be empowered to act as such, though the letters bore the genuine signature of the Surrogate, and were attested by the proper seal of this court. I have not been able to see the opinion of the General Term in that case, but if I am rightly informed as to the points determined thereby, it in effect holds that a person or institution dealing with an administrator, execu-

tor, guardian, or other trustee, must do so at his peril, though each representative or trustee presents, as his authority, the genuine letters of the Surrogate under his official seal; and that, in each case, before he can safely deal with such representative, he must examine the records of this office, and ascertain that all jurisdictional facts have been proved, and that the Surrogate rightly issued the letters. Such a practice seems to me unreasonable, unprecedented, and vexatiously dilatory, and directly at variance with the decision of the Court of Appeals in the Roderigas case, wherein it was held, substantially, that as the Surrogate had general jurisdiction over the subject of administration of intestate estates, his decision upon the question of his jurisdiction, to wit: decedent's death, was conclusive, until reversed, revoked or vacated, and a protection to innocent persons acting upon the faith of it. The case in the Superior Court might have been different, if the evidence had shown that the alleged failure of the Surrogate to adjudicate upon the issuing of the letters had come to the knowledge of the bank, the defendants in that case; but as I am informed, there was nothing to impugn the good faith of the defendants therein, but on the contrary clear evidence of their sole reliance upon the authority and protection of the letters of administration. I am of the opinion that when the representative of an estate is possessed of regularly authenticated letters, and exhibits them to a person owing some duty to the estate, such person may deal with the representative, upon the assumption that the authority was lawfully conferred, and, acting innocently therein, should be protected.

I am, therefore, of the opinion that the letters of

guardianship issued by this court to the petitioner would
have protected the executors if they had paid there-
under.    But as they have assumed to examine the
records, if they have discovered any jurisdictional defect
in the issuing of the petitioner's letters, it is probable
that they would not come under the immunity of
"innocent persons" adjudged in the Roderigas case.
It becomes proper, therefore, to consider whether the
petitioner's letters were properly issued.

It is true that the transcript from the records of the
Orphans' Court of Philadelphia, showing that the
petitioner was appointed guardian, &c., does not show
that the petitioner had given a *bond and security* in
Pennsylvania, but it did appear that the petitioner was,
by the laws of that state, authorized to receive such
appointment without giving any security, and that the
capital of the petitioner was to be taken and considered
as the only security required by law, &c., and was,
together with its property and effects, liable in case of
default.    The object of a bond with sureties, under our
statute, was of course to provide security to the ward.
As our state has adopted the same practice of authoriz-
ing corporations to receive such trusts without security,
it seems to me that by considering the act of the legisla-
ture of the State of Pennsylvania, which is in harmony
with the practice in our own state, and provides that the
capital of such corporation with its property and effects,
shall be deemed pledged to the right administration of
such a trust, as equivalent in spirit and fact to a *bond
with sureties*, this court does no violence to the purpose
of the act in question, but thereby adopts a construction

which best accords with the spirit of interstate comity, in response to which the law of 1875 was enacted.

I am of the opinion that the letters issued by this court to the petitioner were properly granted, and that an order should be made directing the executors to pay to the petitioner as such guardian the sum of $1,000, on account of the legacy, in behalf of the ward he represents.

Ordered accordingly.