In the Matter of the Estate of JANET GRINNELL CLEMENS, Deceased.

Surrogate's Court, Ontario County, September 3, 1940.

*James P. Donovan,* for the petitioner.

*C. W. Rice,* for the Fidelity and Deposit Company of Maryland, respondent.

CRIBB, S. The petitioner claims that the alleged decedent is now living at Cornell, Wis., and seeks the revocation of letters of administration heretofore granted by this court to one Ellen G. Lee upon the grounds that the alleged decedent is the same person named as the decedent in the petition for such letters, and further prays for a decree directing said Ellen G. Lee to pay to her moneys which she obtained under the authority of such letters.

On the 27th day of November, 1933, one Ellen G. Lee filed a petition in the Surrogate's Court of Ontario county praying for a decree awarding letters of administration to her upon the goods, chattels and credits of Janet Grinnell Clemens. The petitioner alleged that she was a resident of the city of Binghamton, N. Y.; that the decedent was a resident of the town of Seneca in said county of Ontario and that she died in the city of New York on or about the 15th day of February, 1927; that the petitioner had been unable to discover any will of the decedent, and that the decedent died possessed of personal property within New York State not exceeding $800 in amount, and was seized of no real estate at the time of her death; that the decedent left no husband her surviving and that the petitioner was a sister of the decedent and her only next of kin. Ellen G. Lee duly qualified as administratrix and filed a bond in the sum of $800 issued by the Fidelity and Deposit Company of Maryland, and letters were duly issued to her on the 27th day of November, 1933.

On the 10th day of January, 1938, Mary Crabtree filed a petition in this court praying for an order directing the said Ellen G. Lee, as administratrix of the estate of Janet Grinnell Clemens, and the Fidelity and Deposit Company of Maryland, surety on her bond, to show cause why a decree should not be made vacating and setting aside the decree granting letters of administration of the estate of Janet Grinnell Clemens to Ellen G. Lee, and why a decree should not be made directing the payment to Janet Grinnell Clemens Watkins of all money appropriated by the said Ellen G. Lee in her capacity as administratrix. The petition also requested that the surrogate direct the method of service of citation

to show cause on all interested parties. There was filed with the petition an affidavit by the attorney for the petitioner stating that he had made inquiry of the bureau of records of the department of health of the city of New York as to any record of the death of Janet Grinnell Clemens as alleged in the original petition for letters of administration and had received certificates, which were annexed to the affidavit, from the bureau of records of Manhattan, the Bronx, Brooklyn, Queens and Richmond, respectively, to the effect that there was no record of the death of Janet Grinnell Clemens in New York city in 1927; and that he had made a diligent effort to locate the said Ellen G. Lee through the bureau of police in the city of Binghamton, N. Y., and through the city directory of that city, and that no such person could be found; that he had endeavored to locate said Ellen G. Lee through the surety company issuing the bond to her as administratrix, and was unable to obtain any information as to her whereabouts from that source; that he had contacted the attorney who represented her in the Surrogate's Court upon the issuance of letters to her and was informed by such attorney that he had no knowledge of her whereabouts and had never had her street address; that he had exhausted every means known to him of locating said Ellen G. Lee and was unable to locate her within the State of New York and had no information concerning her present residence or whereabouts.

Upon an order of this court citations were issued and served upon the bonding company, the attorney for said Ellen G. Lee upon her appointment, and the Ontario County Trust Company. A citation was also served upon the said Ellen G. Lee by serving the same upon the clerk of the Surrogate's Court of Ontario county pursuant to such order and under the designation which was duly executed by her at the time of her appointment.

Upon its face it would appear that the said Mary Crabtree had executed the petition for the show cause order in her individual capacity, but there was filed with said petition a power of attorney executed on the 14th day of August, 1937, by " Janett Watkins," who is claimed to be the same person as Janet Grinnell Clemens, empowering the said Mary Crabtree " to do all things necessary or proper to protect my interests, and to recover property belonging to me which has been claimed by a person purporting to be my sister, who has secured letters of administration from the Surrogate's Court of the County of Ontario."

Neither of the respondents filed an answer in this proceeding. The bonding company appeared by its attorney. There was no appearance on the part of the said Ellen G. Lee. No objection

was made by respondent appearing as to the failure of the petition to allege that Mrs. Crabtree executed the same as attorney in fact for the petitioner, excepting that its attorney referred to it in his brief by stating: " This citation was issued upon the petition of Mary Crabtree. To the petition was attached a power of attorney signed by ' Janett Watkins,' under which Mary Crabtree was presumably acting, although not so stated." Several hearings were held. A number of exhibits were received in evidence. Mary Crabtree and an officer of the Ontario County Trust Company were the only witnesses sworn. The petitioner and respondent bonding company by their respective attorneys have presented oral arguments and filed briefs.

Counsel for the petitioner argues that the respondents having filed no answer herein and submitted no proofs, the allegations in the petition constitute due proof of the facts therein stated under section 76 of the Surrogate's Court Act, and that this court, therefore, has no recourse other than to grant the relief sought by the petitioner. I do not so interpret the provisions of section 76 (formerly section 2546 of the Code of Civil Procedure). In *Matter of Hyde* (218 N. Y. 55) the court, commenting on this section, said: " The words ' due proof,' therefore, as used in the section would seem to have the meaning merely of ' proper or legal proof.' The moving affidavits are in the nature of testimony rather than pleadings. Wigmore (Vol. 2, p. 1697) points out that no statement unless by special exception should be used as testimony until it has been probed and submitted to the test of cross-examination, ' the greatest legal engine ever invented for the discovery of truth.' " Ford on Evidence (Vol. 4, p. 2713) says: " The sufficiency of evidence to produce a belief as to the existence or non-existence of the ultimate facts, is, primarily, a matter of judgment, and not a matter of legal rules." Section 76 of the Surrogate's Court Act should not be interpreted to read, " every material allegation of an affidavit, not controverted by the answering affidavit *must,* for the purpose of the proceeding, *be taken as true."* (*Matter of Hyde, supra.*)

This proceeding has been informal — perhaps too much so. The interposition of an answer would have put the moving party to her proof and probably would have adduced more evidence for the guidance of the court. However, the attorney for the appearing respondent demanded the right to examine Mrs. Crabtree who as attorney-in-fact instituted this proceeding in behalf of the alleged decedent herein. She was produced and examined at great length.

In the petition for the show cause order, Mary Crabtree alleges that she has been acquainted with Janet Grinnell Clemens Watkins for many years and that while the latter was a resident of the State of New York she resided with her, gave to her a general power of attorney, and that during such time the petitioner was familiar with her financial affairs. The petition then relates the granting of letters of administration to Ellen G. Lee by this court and the withdrawal of the entire account from the Ontario County Trust Company. The petitioner further alleges that the said Janet Grinnell Clemens Watkins is now a resident of the village of Cornell, Wis., and that the petitioner is familiar with her relatives and that she 'had only one sister who died in infancy; that Janet while a resident of New York State was married to one Hugh Clemens who abandoned her soon after the marriage, and that thereafter she was married to Sebastian Watkins in the State of Wisconsin.

The respondent bonding company contends: *First.* That 'the petitioner is not one of the persons authorized by section 99 of the Surrogate's Court Act to bring a proceeding for the revocation of letters. *Second.* That this proceeding should be dismissed upon the further grounds that the petition, supporting affidavits and evidence before the court do not constitute facts sufficient to warrant a revocation of letters. *Third.* That in case the letters of administration are revoked, the surrogate is without jurisdiction to act further in the matter.

As I view it we are called upon to determine the following questions: 1. If a supposed decedent, upon whose estate letters of administration have been issued is in fact living, is such supposed decedent one of those persons enumerated in section 99 of the Surrogate's Court Act who may bring a proceeding for the revocation of such letters? 2. If this is answered affirmatively, was the petitioner herein, Janett Grinnell Clemens Watkins, living at the time letters were issued to Ellen G. Lee? 3. If this is answered in the affirmative, may the surrogate revoke the letters? 4. If letters are revoked, what further action, if any, may or should the surrogate take?

Taking up the first question, we find that section 99 of the Surrogate's Court Act reads, so far as here applicable, as follows: " Removal, or revocation of letters for disqualification or misconduct. In either of the following cases, a creditor or person interested in the estate of a decedent, or a ward or friend of a ward, or a person beneficially interested in the execution of a trust, or any surety on a bond of a person to whom letters have been granted or of a trustee may present to the Surrogate's Court having juris-

diction a petition, praying for a decree revoking those letters, or removing such trustee, and that the respondent may be cited to show cause why a decree should not be made accordingly:   *   *   * 4. Where the grant of his letters, or his appointment was obtained by a false suggestion of a material fact."

Subdivision 8 of this section reads: " In the case of a temporary administrator, appointed upon the estate of an absentee, where it is shown that the absentee has returned; or that he is living, and capable of returning and resuming the management of his affairs; or that an executor, or administrator-in-chief has been appointed upon his estate; or that a committee of his property has been appointed by a competent court of the State."

Clearly this section does not expressly provide that a person, falsely alleged to be dead in a petition for letters of administration upon his estate, may bring a proceeding to revoke letters granted upon such petition.   However, subdivision 8 provides for the case of an absentee where a temporary administrator or an executor or administrator-in-chief has been appointed.   In such a case there could be no person enumerated in the first paragraph of section 99 who could petition for revocation of letters, excepting, possibly, the surety on the bond.   A bond is not usually required of an executor, and in certain cases not from an administrator, in which cases there would be no person expressly named in section 99 who could petition for revocation of letters, and the provisions of subdivision 8 would become a nullity leaving the supposed decedent without recourse to secure the revocation of letters issued on his estate.   This could not have been the intention of the Legislature.   Under the circumstances here obtaining, if the petitioner herein, Janet Grinnell Clemens Watkins, is in fact living and the owner of the bank account appropriated by Ellen G. Lee under the cloak of letters of administration, who else would institute this proceeding?   If Ellen G. Lee perpetrated a fraud upon this court whereby she personally obtained the moneys from the bank account, she certainly would not voluntarily institute any further proceeding in this court or appear therein for any purpose.   We may assume that the respondent bonding company received the initial premium for issuance of the bond filed by Ellen G. Lee and has not received annual premiums since.   Otherwise it would be in a position to know or ascertain the whereabouts of its principal and obviously would have produced her in court upon this proceeding.   Hence, it was to the advantage of the bonding company to " let sleeping dogs lie."   If there was no decedent in fact, there could be no decedent's estate, and, therefore, no persons interested

in obtaining revocation of letters other than the supposed decedent. Furthermore, section 100 of the Surrogate's Court Act provides the method of procedure where a petition is filed pursuant to section 99 of the Surrogate's Court Act, and, after providing for the making of an order by the surrogate suspending wholly or partly the activities of the respondent during pendency of the proceeding, and the method of service, it states: " but, from the time when it is made, the order is binding upon the respondent and upon all other persons, without service thereof, *subject to the exceptions and limitations prescribed in sections eighty-five and eighty-six of this act, with respect to a decree revoking letters.*" Section 86 qualifies section 85 in certain enumerated cases, one of which is " where letters are revoked, because a supposed decedent is living." It would, therefore, seem that these sections are tied in together for certain purposes and that the legislators intended to provide for cases similar to the one before us. Section 85 makes no exceptions as to cases where the supposed decedent is found to be living as I shall comment upon later. The surrogate alone has the power to revoke letters. (1 Jessup-Redfield [3d ed.], § 621 and cases cited.) If this is true and the petitioner herein is found to be the same person alleged to be dead in the petition of Ellen G. Lee upon which letters were granted to her, must such letters remain in full force and effect, thereby affording opportunity to the pseudo administratrix to perform, possibly, other acts to the detriment and damage of Janet Grinnell Clemens Watkins? Furthermore, subdivision 10 of section 314 of the Surrogate's Court Act defines an interested person as follows: " The expression, ' persons interested,' where it is used in connection with an estate or fund, includes every person entitled, either absolutely or contingently, to share in the estate or the proceeds thereof, or in the fund, as husband, wife, legatee, next of kin, heir, devisee, assignee, grantee or otherwise except as a creditor." This definition includes *every person* entitled either absolutely or contingently to share in the estate or proceeds thereof, *or in the fund,* " as husband," etc., " *or otherwise,* except as a creditor." If the allegations of the petitioner as to her identity are true, and if there is no other person, admittedly qualified to petition under section 99, who will make the petition, then she is entitled to petition and I so hold.

At the time of issuance of letters to Ellen G. Lee there was an account of $752.63 in the Ontario County Trust Company at Canandaigua, N. Y., in the name of the alleged decedent. On the 29th day of November, 1933, the administratrix drew a check against this account payable to her attorney, for his services and

disbursements in securing her appointment. On the 1st day of December, 1933, three days after letters were issued to her, by a check payable to herself individually, she withdrew $640.58, thereby exhausting the account. So far as the record reveals she thereafter performed no act as administratrix of the estate, and no accounting or other proceeding was had by her in this court.

The respondent appearing herein bases its argument that the petition, supporting affidavits and the evidence do not constitute facts sufficient to warrant a revocation of letters, chiefly upon the different names used by the petitioner, or by others in referring to her, as well as the various spelling of such names, i. e., that there is insufficient proof to identfiy the petitioner, named as " Janet Grinnell Clemens Watkins " as " Janet Grunnell," the latter being the name in which the bank account here involved was originally opened, and subsequently withdrawn by Ellen G. Lee under authority of the letters issued to her.

It appears from the bank records that on the 18th day of March, 1907, an account was opened in the McKechnie Bank in the name of " Janett Grunnell " and the signature card made by the depositor bore that name. (McKechnie Bank was succeeded by County National Bank, and the latter by Ontario County Trust Company.) The last deposit in this account was one of twelve dollars made September 30, 1913, and the last withdrawal, both made by the owner thereof individually, was February 2, 1912, in the sum of thirteen dollars. When this account was opened by Janett she was then employed in the home of Mrs. Crabtree at Phelps, Ontario county, N. Y., and the latter accompanied her to the bank when the account was opened. It appears from the testimony of the bank officer that the account in question was included in a publication of unclaimed deposits of the Ontario County Trust Company in the years 1925, 1926, 1927, 1928, 1932 and 1933. The name of the account owner in these publications was given as " Janette Grinnell Clemens." When asked how the name " Clemens " happened to be later used in the bank record of this account, he replied: " Probably by the party appearing at the bank personally or by letter notifying us to the effect that they had been married perhaps." No evidence was submitted showing why the name " Grunnell " later came to be spelled on the bank records as " Grinnell," and the name " Janett " as " Janette." However, the account had run for many years and the bank had undergone three reorganizations. In any event the bank officer swore that the account advertised by it and withdrawn by Ellen G. Lee

under authority of letters issued to her was the same account opened by Janett Grunnell in 1907.

It is true that the petitioner's name since her earlier years in Phelps, N. Y., has been spelled in varying ways and the use of her married names in some instances, and not in others, has added to the confusion. It is unnecessary to review here in detail all the evidence upon this point. It is sufficient to observe that there are four signatures of the petitioner in the records. She signed her name to a power of attorney in 1906 as " Janett Grunnell," and in the same way on the identification card when she opened the bank account in 1907. With the petition herein was submitted a power of attorney to Mary Crabtree authorizing her to commence this proceeding, dated August 14, 1937, and signed by the petitioner as " Mrs. Janet Watkins," and also an affidavit of the same date which she signed " Janett Watkins." The use of the names " Clemens " and " Watkins " resulted from the two marriages. Early in life the petitioner for some unknown reason spelled the family name " Grunnell " instead of " Grunwell." " Grunnell " apparently was converted into " Grinnell " by the bank. An examination of the moving papers in this proceeding and instruments later received in evidence reveals an indiscriminate use of the names Grinnell, Clemens and Watkins, as well as various spellings of petitioner's given name. It appears that the petitioner was not of normal mentality. We have the testimony of Mrs. Crabtree, who had known and seen her frequently for a long period of years before she went to Wisconsin, that Janett was always " peculiar," did " queer things," and had little education. Mrs. Crabtree further testified: " Q. Perhaps she had been a child and continued to be a child? A. Yes. Q. And her mentality was that of a child of some ten years old? A. No, I wouldn't say that. Q. What would you say? A. I think she was a little better than that, but not much. Q. What do you mean? A. She was not a woman that was calculated to wend her way in the world. She was not a fool." This evidence is corroborated by a letter from Lincoln Grunwell, a brother of the petitioner, living in England. About nine months after this proceeding was commenced Janett Watkins, the petitioner herein, was declared incompetent by the County Court of Chippewa county, Wis., and a guardian was appointed for her. He has been substituted by an order of this court to continue this proceeding in her behalf.

If the alleged decedent was possessed of such an inferior intellect, that fact may account for any changes made by her in spelling her name or in the use of the several names referred to. Therefore,

I am of the opinion that we can attribute the various spellings of the words "Janett" and "Grunwell," and the use of the words "Clemens" and "Watkins" in some cases, and not in others, to the idiosyncrasies of the supposed decedent, the failure of the bank's employees to keep correctly the record of account, and the carelessness of the attorneys in preparing, or in securing the execution of some of the instruments filed with the petition or presented in evidence. We may wonder why the petitioner permitted the bank account to lie dormant and unclaimed for so many years after she left New York State. But we must remember that her first husband left her soon after the marriage and, according to Mrs. Crabtree's testimony, she never knew what became of him and no decree of divorce was made. This being true, it may well be that Janett, having again married in Wisconsin, felt it would be unwise to try to withdraw the moneys from the bank account and thereby possibly become involved in proceedings questioning her then married status.

A careful review of the entire record satisfies me that the maiden name of petitioner herein was Janett Grunwell (later spelled "Grunnell" by her); that while living at Phelps, N. Y., she married one Hugh Clemens; that subsequently she moved to Wisconsin and there married one Watkins who is now deceased; and that she now resides at Cornell, Wis.

The certificates from the New York city bureau of records are convincing proof that Janet Grinnell Clemens did not die in New York city as alleged in the petition for letters. I think it is also significant that for some reason, apparently known only to her, Ellen G. Lee did not file in this court her petition for letters of administration, the accompanying oath of office, designation and bond until November 27, 1933, although all of such instruments were executed by her December 2, 1932, and that nearly six years had elapsed between the alleged date of death of Janet Grinnell Clemens and the date of the execution and verification of the petition for letters. It is further important to remember that the bank had included the account in question in the publication of its unclaimed deposits five times before the date of the verification of the petition for letters, and once during the period between the verification of the petition and its presentation to the court nearly a year later. The facts and circumstances surrounding the granting of letters, as well as subsequent events, throw a cloud of suspicion over the whole transaction. I am, therefore, satisfied that no woman by the name of Janet Grinnell Clemens died in New York city in 1927 as alleged in the petition for letters. I am further satisfied

that the bank account withdrawn by Ellen G. Lee under authority of the letters issued to her was the same account opened by Janett Grunnell in 1907.

Counsel for the respondent bonding company in his oral argument and in his brief has contended that it may well be " assumed that a woman by the name of Janet Grinnell Clemens actually died as stated in the petition for the appointment of an administrator of her estate." However, the fact remains that he offered no evidence to this effect, while the facts adduced by him upon his examination of Mary Crabtree and the bank official, and other evidence in the proceeding, clearly indicate the contrary.

I think it only fair to the attorney who represented Ellen G. Lee upon her application for letters to add at this point that I find nothing in the record indicating any unethical or improper conduct on his part in that proceeding.

Section 99 of the Surrogate's Court Act enumerates the cases under which a proceeding may be instituted for the revocation of letters, one of which reads as follows: " 4. Where the grant of his letters, or his appointment was obtained by a false suggestion of a material fact." I find the allegation in the petition of Ellen G. Lee for her appointment as administratrix to the effect that Janett Grinnell Clemens died in the city of New York on February 15, 1927, constituted a " false suggestion of a material fact," and that by reason thereof letters of administration to her should be revoked.

I have already commented upon the references made in section 100 of the Surrogate's Court Act to sections 85 and 86. That part of section 85 providing for the contents of a decree revoking letters reads as follows: " The decree may, in the discretion of the surrogate, require him to account for all money and other property received by him; and to pay and deliver over all money and other property in his hands into the Surrogate's Court, or to his successor in office, or to such other person as is authorized by law to receive the same; or it may be made without prejudice to an action or special proceeding for that purpose, then pending, or thereafter to be brought." Section 86 provides that section 85 shall not " affect the liability of a person to whom money or other property has been paid or delivered, as husband, wife, next of kin, or legatee, to respond to the person lawfully entitled thereto, where letters are revoked, *because a supposed decedent* is living; or because a will is discovered, after administration has been granted in a case of supposed intestacy, or revoking a prior will upon which letters were granted." The appearing respondent argues that none of

these sections contemplate a case like the one before us, but only cases where an administrator was properly and legally appointed in the first instance, and that, therefore, if letters are here revoked, the surrogate cannot further act in the matter, and that if Ellen G. Lee, under pseudo letters, has appropriated to herself the moneys of a living person, the latter must resort to another court for relief.

If letters of administration are granted upon the estate of a person supposed to be dead, and later found to be living, I can see no distinction, for the purpose of this determination, between a case where letters are granted upon a petition made in good faith and one when the petitioner willfully and knowingly made a " false suggestion of a material fact." The use of the words in qualifying section 86, " because a supposed decedent is living," must have contemplated that cases might arise where a decree revoking letters would be made under section 99 for just that reason, *i. e.*, that the supposed decedent was in fact living. At the same time section 85 provides that the decree revoking letters " may, in the discretion of the surrogate, require him to account for all money," etc. If this section were to be written under the interpretation placed upon it by the respondent bonding company it would have to read that the decree revoking letters " may, *except in cases where the supposed decedent is found to be living*, in the discretion of the surrogate, require," etc. No exception is made to this effect in any of the sections under consideration.

" When letters duly granted are revoked the surrogate should require an accounting from the party whose letters are revoked and a transfer of the fund or property of the estate into court, or to a representative duly appointed." (*Matter of Cavanaugh*, 72 Misc. 584.) Jessup-Redfield ([3d ed.], vol. 1, § 640), in commenting on section 85 of the Surrogate's Court Act states: " It is the revocation, not the reason therefor that sets this section in operation. Revocation is not necessarily the result of wrongdoing or unfitness. Thus, a will is probated, the executor qualifies and begins to administer the estate. Later the probate decree is reversed, or vacated. The letters fall — they are revoked. It is no fault of the executor. But of course he must account." If in such a case an executor, having received letters in good faith is called upon to account when they are revoked, I can see no reason why the administratrix in the instant case, to whom letters were issued upon false representations made by her, should be relieved of her responsibility to account. In either case the requirement as to accounting and paying over and delivering all money and property is made for the protection of the estate or fund and not to penalize the party

whose letters are revoked. (See *Matter of Burr*, 118 App. Div. 482, and cases there cited.)

This case is unusual. Briefs submitted throw little light on the principles involved. Petitioner's attorney has cited no case in his brief. Respondent's attorney cites only *Williams* v. *Kiernan* (25 Hun, 355) as "somewhat similar" to the instant case, and seems to rely upon that case to support his contention that at most the surrogate can do nothing further in the instant case than to revoke letters. In that case letters of administration were issued by the surrogate upon a fraudulent petition. The supposed decedent was living. The letters were revoked three months later, and in an action by the plaintiff against the person to whom they had been issued for an accounting concerning the property obtained under the authority of the letters, a judgment was obtained. An execution was issued and returned wholly unsatisfied. Plaintiff then brought an action against the defendants upon a bond executed by them as sureties for the administrator. The defendants demurred to the complaint, assigning as one cause for the demurrer that the plaintiff had not the legal capacity to sue, and that there was a defect of parties plaintiff, *i. e.*, maintaining that the action on the bond could be prosecuted only in the name of the People of the State. In passing upon this last question the court said:

"But the further provisions of the statute, prescribing what shall be done before such an action can be prosecuted in the name of the People, cannot be complied with by reason of the fact that the person on whose estate the letters were issued was living at the time when they were obtained. There was consequently no creditor, legatee or next of kin of the owner of the estate who could require the administrator to account, as that has been provided for and in terms limited by the statute.

"No decree consequently could be obtained before the surrogate against the administrator, either for a final settlement of the estate or the payment of a debt, legacy or distributive share, and the facts, therefore, could not possibly be brought into existence upon which alone the surrogate could cause the bond to be prosecuted."

This case was decided in 1881 since which time the statutory and equity powers of surrogates have been greatly extended.

My search has revealed no cases where the supposed decedent is found to be living which involve the precise questions here presented, *i. e.*, any further action by the surrogate upon revocation of letters. All of the cases found by me growing out of the issuance of letters upon the estate of a living person involve transactions, or attempted transactions, by the administrator with a third

person, or with persons other than the supposed decedent. In the much-discussed case of *Roderigas* v. *East River Savings Institution* (63 N. Y. 460) the court held that letters issued on the estate of one supposed to be dead, and later found to be living, were not for that reason absolutely void, and that a person acting in good faith with the administrator so appointed would be protected. This case involved the payment of a deposit in a savings institution to an administrator under letters issued in the lifetime of the depositor. Upon the death of the depositor his administrator brought an action against the savings bank to recover the moneys which it had paid to the administrator under letters issued in the lifetime of the depositor. The court there held that the payment by the bank to the administrator first appointed was a good defense to the action brought by the administrator appointed after the death of the depositor, upon the ground that the statutes of the State of New York made it the duty of the surrogate, when applied to for administration on the estate of any person, to try and determine the question whether he was alive or dead, and, therefore, his determination of that question was conclusive. This line of reasoning was overruled in *Scott* v. *McNeal* (154 U. S. 34). Mr. Justice GRAY, in delivering the opinion in this latter case, said: " The fundamental question in the case is whether letters of administration upon the estate of a person who is in fact alive have any validity or effect as *against him.*" (Italics supplied.) He then reviewed many cases involving the issuance of letters upon the estate of a living person. The following extracts from the opinion are of interest in determining this case:

" But suppose administration to be granted on the estate of a person not really dead. The act, all will admit, is totally void. Yet the ordinary must always inquire and decide whether the person, whose estate is to be committed to the care of others, be dead or in life. It is a branch of every cause in which letters of administration issue. Yet the decision of the ordinary that the person on whose estate he acts is dead, if the fact be otherwise, does not invest the person he may appoint with the character or powers of an administrator. The case, in truth, was not one within his jurisdiction. It was not one in which he had a right to deliberate. It was not committed to him by the law."

" The estate of a person supposed to be dead is not seized or taken into the custody of the court of probate upon the filing of a petition for administration, but only after and under the order granting that petition; and the adjudication of that court is not upon the question whether he is living or dead, but only upon the

question whether and to whom letters of administration shall issue."

" The appointment by the probate court of an administrator of the estate of a living person, without notice to him, being without jurisdiction, and wholly void as against him, all acts of the administrator, whether approved by that court or not, are equally void; the receipt of money by the administrator is no discharge of a debt; and a conveyance of property by the administrator passes no title."

If the rule laid down in *Roderigas* v. *East River Savings Institution* (*supra*) should obtain, it is apparent that the supposed decedent would be deprived of his property without due process of law, within the meaning of the Fourteenth Amendment of the Constitution of the United States. The cases discussed in *Scott* v. *McNeal* (*supra*) and others which I have examined involve acts performed with others against the interest of the supposed decedent.

The rule that the granting of letters on the estate of a living person is void *ab initio* is applicable to the instant case. In such event the surrogate may and should revoke the letters. But does it follow under this rule that he may exercise no further control over the administratrix? It is conceded that any acts performed by Ellen G. Lee by authority of letters issued to her are wholly void *as against the petitioner herein*. But I am not in this proceeding determining any issues between Ellen G. Lee, or the petitioner, and any party with whom the former may have had business relations as such administratrix. I am not attempting to fix the liability of the surety on the bond of the administratrix nor am I called upon to determine the liability, if any, of the bank in paying out to her the funds of the account opened in 1907 by the petitioner herein.

Ellen G. Lee on her verified petition submitted herself to the jurisdiction of this court and letters were issued to her whereby she became an officer of the court. Surrogates cannot acquire jurisdiction where not conferred by statute, although the parties appear, assent and submit the questions at issue, but it seems the rule is different as to jurisdiction of the person. (1 Jessup-Redfield [3d ed.], § 90-a, and cases cited.) If she perpetrated a fraud upon the court, using it as an instrumentality to possess herself of the property of another, it seems to me an absurdity to hold that the surrogate can only revoke letters. I believe that the surrogate, under such circumstances not only may, but it is his duty, to direct the pseudo administratrix to account and surrender to the court all moneys secured by her under authority of the letters

granted to her — not for the purpose of now determining to whom they shall subsequently be paid but rather that they may be preserved by the court through which medium she fraudulently obtained them, and remain subject to such disposition as may hereafter be determined by this court or some other proper tribunal.

It appears that Ellen G. Lee to whom letters were originally issued cannot, and probably will not be located. Under such circumstances it is possible that the bonding company, through this or some other court, eventually may be compelled to respond to the lawful owner of the funds withdrawn from the bank by Ellen G. Lee. (See *Williams* v. *Kiernan, supra.*) However, the question of the liability of the bonding company is not before us for consideration. Neither can this court under this proceeding order Ellen G. Lee to pay over to the petitioner herein the moneys which she withdrew from the bank under the authority of letters issued to her. But such letters may, and should be revoked, with a direction to account and pay over and deliver to the Surrogate's Court all property as provided by section 85. This court may then control and preserve the fund in question pending further proceedings, whether in this or another tribunal.

If the contention that this court has no jurisdiction in this matter, save possibly to revoke the letters, is well taken, then there must result to the petitioner delay and expense in instituting further and different proceedings in another court, and to the pseudo administratrix the opportunity to commit further illegal acts under color of letters of administration. There is a concerted effort today on the part of our judges and legislators to simplify the practice and eliminate a useless multiplicity of actions. Section 115-a of the Surrogate's Court Act was enacted in 1931 for this express purpose. (See Report of Commission to Investigate Defects in the Law of Estates.) Counsel for respondent refers to this section in his brief and again argues that its provisions are applicable only " Where there have been in the first instance the legal appointment of an administrator." In my opinion this section must also be read with the sections hereinbefore discussed. It is true that if in this case there was no " decedent," there can be no " decedent's estate," but my analysis of the sections referred to convinces me that the legislators had in mind cases where a supposed decedent might be found to be alive, and did not intend to divest the surrogate of all jurisdiction by reason of such a contingency, but on the other hand, by the sections hereinbefore discussed, clothed him with jurisdiction to act as herein determined

when confronted with facts and circumstances of the character obtaining in this case.

I, therefore, hold that the letters of administration granted to Ellen G. Lee should be and are revoked, and that she file an accounting of her proceedings under such letters in this court within thirty days from the entry of an order hereunder, and that she pay and deliver over to the Surrogate's Court of Ontario county all money and other property in her hands which was obtained by her under and by virtue of said letters of administration.

Let a decree be entered, on notice, in accordance herewith.