No. 17.—THE LESSEE OF WM. GRIFFITH and others, plaintiffs in error, *vs.* JOHN G. WRIGHT, defendant in error.

[1.] A grant of letters of administration may be impeached by extraneous evidence, showing the Court of Ordinary, which made the grant, to have had no *power* to make it.

Ejectment, in Oglethorpe Superior Court.    Tried before Judge ANDREWS, April Term, 1855.

This was an action by the heirs of George Griffith, against John G. Wright, for a part of a tract of land divided by the county line, between the Counties of Oglethorpe and Taliaferro, and upon which tract of land George Griffith lived prior to his death.    The defendant set up title under a sale by one Glenn, as the administrator of George Griffith.    The letters of administration were granted by the Ordinary of Taliaferro County, and did not recite that Griffith resided in that county at the time of his death.    Counsel for the heirs of Griffith proposed to prove, that by an accurate survey of the county line, and by other evidence, that the residence of George Griffith, at the time of his death, was in Oglethorpe County; and hence, that the Ordinary Court of Taliaferro

County had no jurisdiction; and the letters of administration granted were therefore *void*. The Court refused to admit the evidence, on the ground that the letters could not be thus attacked, collaterally, in this case.   This is the error assigned.

REESE; TOOMBS, for plaintiffs in error.

IRVIN & BARNETT, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

[1.] The fourth section of the Act of 1839, "to make it the duty of the Clerks of the Court of Ordinary" to preserve evidence, &c. is in the following words: "Sec. IV. In all cases hereafter, letters of administration shall only be granted by the Court of Ordinary of the county where the deceased resided at the time of his death, if a resident of this State."

Under this section, the Court of Ordinary of the county in which George Griffith resided at the time of his death, was the only Court of Ordinary in the State which had power to grant letters of administration on his estate.   If, therefore, Taliaferro was not that county, the Court of Ordinary of Taliaferro had no power to grant the letters of administration on his estate, which it did grant; and the grant of such letters was "a mere nullity." (*Towns, Gov. vs. Springer and others,* 9 *Ga.* 130.    *Beverly & McBride vs. Burke, do.* 446.)

Was it the right of the plaintiffs to show, by such evidence as that which they offered, that George Griffith, at the time of his death, did not reside in the County of Taliaferro, but did reside in the County of Oglethorpe ?    This is the question.

The evidence offered by the plaintiffs, consisted not in the acts, recitals or proceedings of the Court of Ordinary of Taliaferro, but in other things.    Nothing appeared on the face of any of the acts, recitals or proceedings of that Court to show where Griffith resided.

Now, if a want of jurisdiction in the Court is disclosed by something which is apparent on the face of the cause, there is

Lessee of Griffith *et al. vs.* Wright.

no dispute, I believe, but that any body may, collaterally or otherwise, if need be, avail himself of that something, to have the judgment rendered in the cause considered a nullity. *Case of the Marshalsea,* (10 *Coke,* 168.) In such a case a prohibition would go, even after judgment. (*Com. Dig. Prohibition D.*)

But when the want of jurisdiction is not so disclosed, whether that which would disclose it may, in some proceeding not begun for the special purpose of annulling the judgment, be shown by extraneous evidence, is a question about which there is less of certainty.

One of the two answers to the House of Lords, given by the Judges in the Duchess of Kingston's case, was "that a sentence in the Spiritual Court against a marriage, in a suit of jactitation of marriage, is not conclusive evidence, so as to stop the Counsel for the Crown from proving the marriage, in an indictment for polygamy." The main reason which is given for this answer is, that "the parties are not the same." (2 *Smith's Lead. Cases,* 432, 428.) This reason is sufficient to sanction the proposition, that judgments in the Spiritual Courts are conclusive upon none except the parties and their privies; and therefore, that such judgments may, by all other persons, be attacked, and that with extraneous evidence, not merely on the ground of a want of jurisdiction in the Court to render them, but on any other ground which may show that they should never have been rendered. Whether, however, a proposition going this length would not be going too far, may admit of a doubt. I question, myself, whether such a proposition would be going farther than would be warranted by the case of *Brown and another vs. Wright,* (5 *Ga. R.* 29.) But that anything which would show a *want of jurisdiction* in such Courts may be proved by extraneous evidence, is a proposition that seems to pass unquestioned. In *Allen vs. Dundas,* (3 *D. & E.* 130,) *Buller,* J. says, "secondly, the probate is conclusive till it be repealed; and no Court of Common Law can admit evidence to impeach it. Then, this case was compared to a probate of a supposed will of a living

person; but in such a case, the Ecclesiastical Court have no jurisdiction, and the probate can have no effect." "The distinction in this respect, is this : if they have jurisdiction, their sentence, as long as it stands unrepealed, shall avail in all other places ; but where they have no jurisdiction, their whole proceedings are a nullity." And accordingly, this is laid down as the general doctrine by Smith, in his notes to the Duchess of Kingston's case. (2 *Smith's Lead. Cas.* 440.)

This same doctrine is true, also, of foreign judgments and judgments rendered in the British Colonies, and in Ireland and in Scotland. (*Id.* 442–3.)

The Courts of Ordinary occupy, in Georgia, the place which, in England, is occupied by the Spiritual Courts. The law, therefore, applicable to the latter, has, in general, been adopted by the State for the former.

It follows, therefore, that a judgment of the Court of Ordinary granting administration, may be impeached by extraneous evidence, showing the case to have been such that the Court had no power to grant the administration.

If this be so, the evidence which was rejected in this case should have been admitted, for the evidence was such as would have gone to show that the man (Griffith) on whose estate the administration had been granted, was not, at the time of his death, a citizen or resident of the County of Taliaferro, the Court of Ordinary of which county had granted the administration, but of the County of Oglethorpe. And if this had been proved, then, according to the Statute aforesaid, that would have been proved which would have shown the Court to have been without power to make the grant of the administration.

We think, therefore, that a new trial ought to be had.