MISSOURI PACIFIC RAILWAY COMPANY v. THOMAS K. BRADLEY, ADMINISTRATOR.

FILED MAY 18, 1897. No. 7148.

1. **Administrators: APPOINTMENT: JURISDICTION OF COUNTY COURT.** Where a resident of another state dies intestate, an administrator may be appointed by the county court of any county in this state in which there shall be an estate to be administered, irrespective of the value of such estate.

2. ———: ———: ———. The county court of a county wherein a nonresident of the state is killed may appoint an administrator to prosecute a statutory action for the injury causing the death of the decedent, though the latter left no property in this state.

3. ———: REVOCATION OF LETTERS. The fact that one has been sued by an administrator will not authorize such person to petition to the county court for a revocation of the letters of administration.

4. ———. The acts of an administrator *de facto* are binding between the estate and innocent third persons, although his appointment be erroneous and voidable.

ERROR from the district court of Otoe county. Tried below before CHAPMAN, J. *Affirmed.*

*E. F. Warren, C. W. Seymour, James W. Orr,* and *B. P. Waggener,* for plaintiff in error.

*John C. Watson, Wash Adams,* and *Numa F. Heitman, contra.*

NORVAL, J.

On the 9th day of January, 1894, a petition was presented to the county court of Otoe county for the appointment of an administrator of the estate of Charles L. Myers, deceased, alleging, *inter alia*, that Myers, a resident of Jackson county, Missouri, died intestate in Otoe county, this state, on the 22d day of April, 1892, leaving an estate to be administered, consisting of personal property situated and having its situs in said county of Otoe. The prayer of the petition was granted, and Thomas K. Bradley was appointed administrator, who duly qualified as such. Afterwards, on January 30, 1894, the Missouri Pacific Railway Company filed a petition in said county court, setting forth that Bradley, as administrator of the estate of said Myers, deceased, had instituted an action against it in the district court of Otoe county to recover damages resulting from the death of Myers, alleged to have been caused by the negligence of the railroad company; that the appointment of Bradley was fraudulent and collusive, and made for the sole purpose of prosecuting said action; that at the date of the death of Myers he was a resident of the state of Missouri, and left no estate to be administered in the state of Nebraska, and praying that the letters of administration granted to Bradley might be revoked and set aside. A citation was thereupon issued by the county court to Bradley, fixing the date for him to show cause why his appointment as administrator of said estate should not be revoked and annulled, which was duly served. An answer was filed by the administrator denying the allegations contained in the petition of the railroad company, and alleging that it has no interest in the estate of said Myers, as creditor, heir, or distributee of said estate, and that said corporation has no right or authority to file said petition or to

be heard to raise objections to the appointment of said administrator.    Upon the hearing, on April 2, 1894, the county court refused to revoke and cancel the letters of administration, finding specially that Myers died intestate in Otoe county;  that he resided in Jackson county, Missouri, at the time of his death;  that he left as his estate "$4 in money and a pocket-book found upon his person at the time of his death, which said $4 and purse were sent to the widow of deceased at Kansas City, Missouri, at once;  that said money in cash and the said purse were returned to said county of Otoe after the commencement of this proceeding, and came into the hands of the administrator on the 2d day of April, 1894; a claim for $25 for money he had on his person at the time he left home. and a claim to right of action for damages against the Missouri Pacific Railway Company for injuries occasioning the death of the said Charles L. Myers."    The railroad company excepted, and prosecuted error to the district court, where the decision of the county court was affirmed.    The record has been brought to this court for review.

It is argued that the grant of letters of administration to Thomas K. Bradley upon the estate of Charles L. Myers, deceased, by the county court of Otoe county, was *coram non judice*, because said Myers at the time of his death was a resident of Missouri, and left no estate to be administered in Nebraska.    Section 177, chapter 23, Compiled Statutes, 1895, declares:  "When any person shall die intestate, being an inhabitant of this state, letters of administration of his estate shall be granted by the probate court of the county of which he was an inhabitant or resident at the time of his death.    If such deceased person, at the time of death, resided in any other territory, state, or county, leaving estate to be administered in this state, administration thereof shall be granted by the probate court of any county in which there shall be estate to be administered;  and the administration first legally granted shall extend to all the estate of

the deceased in this state, and shall exclude the jurisdiction of the probate court of every other county." There is no claim that Myers was a resident or inhabitant of this state at the time of his death, so the letters of administration issued to Bradley are invalid unless the decedent left an estate to be administered in Otoe county. That Myers died in that county and was then a resident of the state of Missouri is undisputed; but it is asserted that he left no estate in Otoe county sufficient to confer jurisdiction upon the county court of that county to grant administration. The county court found that Myers left in said county, as his estate, a pocket-book, $4, a claim for $25 for money, and the right of action against the railroad company for injuries causing his death. These constituted an estate to be administered. It is true, exclusive of the claim against the company, they were not of great value, but that is wholly an immaterial consideration, so far as the question of jurisdiction is concerned. The statute has not fixed any limitation upon the value of the estate to be administered, and the courts have no right to do so. The jurisdiction of the county court to grant administration is not determined by the value of the estate. (Schouler, Executors and Administrators, secs. 24, 93; 19 Am. & Eng. Ency. Law, 166; *Welch v. New York C. R. Co.*, 53 N. Y., 610; *Wheeler v. St. Joseph & W. R. Co.*, 31 Kan., 640; *Union P. R. Co. v. Dunden*, 37 Kan., 1; *City of Horton v. Trompeter*, 53 Kan., 150.) In the last case the deceased owned property of the value of $2.25 at the time of his death, and it was held the estate was sufficient to authorize the granting of letters of administration. Authority is conferred to administer upon the estates of the poor and rich alike. The statute has made no distinction in that regard.

The argument that jurisdiction was lost by the sending of the pocket-book and the $4 to the widow in Kansas City, Missouri, prior to the filing of the petition for administration in the county court of Otoe county is without merit. Myers' property vested in the adminis-

trator when appointed by relation from the death of decedent. (*Bullock v. Rogers*, 16 Vt., 294; *Valentine v. Jackson*, 9 Wend. [N. Y.], 302; *McMillan v. Wacker*, 57 Mo. App., 220; *Adey v. Adey*, 58 Mo. App., 408; 1 Woerner, American Law of Administration, sec. 173.) An estate was left in Otoe county to be administered, and the sending of a part or all of the personal property out of the county could not divest the court of jurisdiction to issue letters of administration. The widow had no right to the pocket-book and money, as they did not belong to her. The fact that they were forwarded to her, presumably for safe-keeping, is entirely immaterial and did not affect the jurisdiction of the county court. The authority of the county court did not rest alone upon the few articles of personal property already mentioned which the deceased had upon his person when he died, since the cause of action against the railroad corporation was sufficient estate to justify the appointment of an administrator, had there been no other estate to be administered. The decisions in the other states upon the question are conflicting, but the decided weight of the authority sustains the doctrine that the cause of action, under Lord Campbell's Act, is an estate sufficient to grant administration thereon. This court so held in *Missouri P. R. Co. v. Lewis*, 24 Neb., 848. In that case Joseph B. Lewis died in the state of Kansas, from injuries inflicted there by the railroad company. The sole assets of the estate consisted of the claim against the company. Letters of administration were granted by the county court of Washington county, Nebraska, to the widow, who instituted suit against the company for the death of her husband. The jurisdiction of the county court was sustained, and we think properly so, in the light of chapter 21, Compiled Statutes, which reads as follows:

"Section 1. That whenever the death of a person shall be caused by the wrongful act, neglect, or default, and the act, neglect, or default is such as would if death had not ensued, have entitled the party injured to maintain

an action and recover damages in respect thereof, then, and in every such case, the person who, or company or corporation which, would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to a felony.

"Sec. 2. That every such action shall be brought by and in the names of the personal representatives of such deceased person, and the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate," etc.

Under these provisions the right of action against the railroad company for causing the death of Myers constituted an estate within the meaning of section 177, chapter 23, Compiled Statutes. In the language of Montgomery, J., in *Findley v. Chicago & G. T. R. Co.*, 64 N. W. Rep. [Mich.], 732, "it could not have been contemplated by the legislature that the right to bring this action could be made to depend upon the question of whether the deceased left other property. We think it was clearly the purpose to treat this right of action as assets for distribution, and we hold, in accordance with the weight of the authority, that they are such assets within the meaning of section 5848." In the case from which the foregoing excerpt was taken it appears that Myrtle Findlay, an inhabitant of the city of Hamilton, in the county of Wentworth, Ontario, was killed in a railroad accident upon the Chicago & Grand Trunk Railway, near Battle Creek, Michigan. An administrator of her estate was appointed by the probate court of Wayne county, in that state. It was urged that the letters of administration were granted without jurisdiction,—the right of action given an administrator by Lord Campbell's Act did not constitute assets of the estate of a non-

resident of Michigan killed within the state sufficient
to grant administration thereon by the probate court of
that state under a statute relative to the administration
of estates of deceased persons identical with our section
177 quoted above.   The supreme court of Michigan held
letters of administration were properly granted.   To the
same effect are *Merkle v. Bennington,* 68 Mich., 33; *Hart-
ford & N. H. R. Co. v. Anderson,* 36 Conn., 213; *Morris v.
Chicago, R. I. & P. R. Co.,* 65 Ia., 727; *Pinney v. McGregory,*
102 Mass., 186; *Griswold v. Griswold,* 20 So. Rep. [Ala.],
437; *Lang v. Houston Street R. Co.,* 75 Hun [N. Y.], 151;
*Goltra v. People,* 53 Ill., 224.

*Hutchins v. St. Paul, M. & M. R. Co.,* 44 Minn., 5, was an
action by the administrator of William F. Ferguson to
recover damages for the death of plaintiff's intestate,
caused by the alleged negligence of defendant.   De-
ceased was not an inhabitant of Minnesota at the time
of his death and left no property therein, yet letters of
administration were granted by the probate court of Hen-
nepin county, Minnesota, in which the deceased received
his injuries of which he there died.   The jurisdiction of
the probate court to direct administration was assailed
on the same ground as urged in the case at bar.   The court
overruled the contention, saying: "It is true that, strictly
speaking, the cause of action did not belong to the de-
ceased in his lifetime, but only accrued at his death; also,
that, when realized on, the proceeds form no part of his
general estate, but belong to his next of kin.   But the
narrow and literal construction contended for by the ap-
pellant would often prevent the enforcement of the cause
of action at all, because of the impossibility of securing
a personal representative of the deceased to maintain it.
Administration is a proceeding *in rem,* the *res* being the
estate of the deceased; and we apprehend that, whether
the deceased is a resident or a non-resident, the existence
of assets is essential to administration, for it is the estate,
and not the expired breath, of the deceased upon which
administration operates.   Hence it would seem to follow,

from the appellant's logic, that if the deceased left no assets, strictly so called, no administration could ever be had, and consequently the statutory right of action for the benefit of the next of kin could never be enforced. This right of action is given in case of the death of any person, whether a resident of the state, or only temporarily sojourning in it at the time of his receiving the injuries causing his death. The law will not allow it to be defeated for want of a party to maintain it. The fact that the statute gives such a right of action to the personal representative, and to him alone, implies the right to appoint, if necessary, an administrator to enforce it, and administer the proceeds in accordance with the statute."

The first paragraph of the syllabus in *Brown's Administrator v. Louisville & N. R. Co.*, 30 S. W. Rep. [Ky.], 639, reads thus: "The court of the county wherein a non-resident is killed by the negligence of a railroad company may appoint an administrator to sue the company, though the deceased leaves no property in the state other than such right of action." The contrary doctrine is sustained by *Perry v. St. Joseph & W. R. Co.*, 29 Kan., 420, and *Jeffersonville R. Co. v. Swayne*, 26 Ind., 477; but the weight of the adjudications is in favor of the right to have an administrator appointed for the sole purpose of prosecuting an action arising under Lord Campbell's Act, even though there exist no other necessity for such an appointment, and the deceased was not domiciled in this state and left no property therein, and that the county court of the county where the injury was received and the deceased died may properly entertain such jurisdiction. The fact that our statute authorizes a foreign administrator to maintain an action in this state has no bearing upon the question. The legislature has conferred power upon county courts to grant administration in case of non-resident decedents where any estate is left in this state to be administered, and such power is not affected by the fact a foreign administrator may maintain an action in our courts.

The decisions of the county and district courts are right, for the reason that the railroad company possessed no such interest as to authorize it to move to set aside the appointment of the administrator.  The corporation is not a creditor of the deceased, nor is it in any manner interested in preserving the assets, or in the settlement of the estate of Myers.  The company is a mere debtor of the estate, and has been sued by the administrator for the recovery of money, but that gives no right to it to petition for the removal of the administrator.  (*Penniman v. French*, 2 Mass., 140; *Swan v. Picquet*, 3 Pick. [Mass.], 443; *Labar v. Nichols*, 23 Mich., 310; *White v. Spaulding*, 50 Mich., 22; *Augusta & S. R. Co. v. Peacock*, 56 Ga., 146; *Chicago, B. & Q. R. Co. v. Gould*, 64 Ia., 343.) In the last case an administrator of Melville Madden, deceased, sued the railroad company to recover for the death of plaintiff's intestate.  Thereupon the corporation filed a petition for the revocation of the appointment of administrator, setting up that he had been sued at law by the administrator to recover $20,000 alleged to be due the estate; and that the appointment was illegal on the account of the administrator's non-residence.  The supreme court held that the railroad company did not have such an interest in the estate as to authorize it to move for the revocation of the appointment of the administrator, saying: "The plaintiff has an interest to defeat the claim which the estate holds against it.  This interest promps it to resist the claim, and if it is successful, it will destroy what is now regarded as defendant's property. It is absurd to say that plaintiff is interested in the estate in any other way than as a litigant is interested to defeat the claim of his adversary.  Its interest is of the character of that which an enemy feels who seeks the destruction of his foe."

The only case conflicting with the above which has come under the observation of the writer is *Jeffersonville R. Co. v. Swayne*, 26 Ind., 477.  The opinion therein does not contain a single well founded reason for support

of the right of the railroad company to question the legality of the act of the court granting letters of administration. The company, as a debtor merely to the estate, had no such interest as entitled it to resist the appointment of the administrator in the county court in the first instance, or to authorize the prosecution of an appeal from such appointment to the district court. (2 Woerner, American Law of Administration, sec. 544; *Swan v. Picquet*, 3 Pick. [Mass.], 443; *Drexel v. Berney*, 1 Dem. [N. Y.], 63; Croswell, Executors & Administrators, 257.) The bringing of the action against the company for damages gave it no interest in the estate. Its only interest is against the estate.

This and other courts have held that the appointment of an administrator cannot be assailed in a collateral proceeding, where the record of appointment does not disclose a want of jurisdiction. (*Missouri P. R. Co. v. Lewis*, 24 Neb., 848; *Estate of Moore v. Moore*, 33 Neb., 509.) It does not follow, however, that merely because one has been sued by an administrator he may be heard in a direct proceeding in the county court to revoke the appointment because the facts set up in the application on which the letters were granted were untrue. Where the want of authority to make the appointment is disclosed by the record the validity of the letters of administration may be questioned collaterally. But if such letters are issued on the estate of a deceased person by a court of competent jurisdiction upon a petition containing proper allegations, and the requisite notice has been given, they cannot be collaterally attacked, but are binding until reversed, vacated, or revoked in a proper proceeding. The appointment of Mr. Bradley as administrator was in every respect regular as disclosed by the record, and therefore his letters, until revoked, were sufficient to protect innocent persons acting upon the faith of them. A payment to him would bind the estate and discharge the debtor. So a judgment recovered by such administrator against this railroad company would be a bar to a

suit for the same cause of action brought against it by another administrator of the same estate. (*Roderigas v. East River Savings Institution*, 63 N. Y., 460; *Chicago, B. & Q. R. Co. v. Gould*, 64 Ia., 343; Compiled Statutes, ch. 23, sec. 193.) Adams, J., in delivering the opinion of the court in the last case, says: "It is shown by the petition that plaintiff insists that if judgment should be rendered against it in favor of defendant as administrator it could not safely pay the judgment; the thought being that the claim of the estate would not thereby be discharged. Plaintiff, it seems, does not regard the appointment of defendant as void, but voidable only, in that it does not treat his acts as mere nullities, but seeks to have his appointment revoked. If the order of the court in making the appointment was erroneous, and therefore merely voidable, all acts of the administrator, until his appointment be set aside, will be valid. Hence, payment to him before his removal would bind the estate. While acting as such he is regarded as the administrator *de facto*, and his acts are binding between the estate and persons who deal with him in good faith. (*Mutual Benefit Life Ins. Co. v. Tisdale*, 91 U. S., 238; *Cocke v. Halsey*, 16 Pet. [U. S.], 71; *Shephard v. Rhodes*, 60 Ill., 301; *Moreland v. Lawrence*, 23 Minn., 84; *Belden v. Meeker*, 47 N. Y., 307; *Emery v. Hildreth*, 2 Gray [Mass.], 228; *Irwin v. Bank*, 38 Upper Can. Q. B., 375.)" The majority of the cases are in harmony with the foregoing views, although a different rule has been adopted in *Jeffersonville R. Co. v. Swayne*, 26 Ind., 477, and *McChord v. Fisher's Heirs*, 13 B. Mon. [Ky.], 193.

It is also insisted, because the statute authorizes an appeal in all matters of probate jurisdiction "from any final order, judgment, or decree of the county court to the district court by any person   *   *   *   who may be affected thereby," that the railroad company had the right to move to vacate the appointment of the administrator. The fallacy of this argument consists in the erroneous assumption that the railroad company was affected by the order granting letters of administration.

The right to appeal from the decision of the county court in probate matters is vested alone in persons against whom an order, judgment, or decree is made, or who may be thereby affected or aggrieved. One is aggrieved or affected by a decision of such court alone when it operates upon his property or bears directly upon his interest. (2 Woerner, American Law of Administration, sec. 544; *Deerings v. Adams*, 34 Me., 41; *Bryant v. Allen*, 6 N. H., 116; *Wiggin v. Sweet*, 47 Mass., 195; *Smith v. Bradstreet*, 33 Mass., 264.) This railroad company is not affected by the order appointing the administrator, and it had not sufficient interest to move the revocation of the appointment.

The judgments of the county and district courts are right, and they should be

AFFIRMED.

HARRISON, J., concurs.

IRVINE, C., dissenting.

The first question naturally presented is the right of the railway company to maintain the proceeding. We have just decided (*Bradley v. Missouri P. R. Co.*, 51 Neb., 653), following prior decisions of this court, that where want of jurisdiction does not affirmatively appear from the record of the county court, the appointment of an administrator may not be collaterally attacked. From this it logically follows, and to the writer's mind it necessarily follows, that a person sued by one claiming to be an administrator may be heard in a direct proceeding in the probate court to move to revoke the letters for want of jurisdiction to grant them. It certainly seems that a defendant in any action must at some time and in some manner be permitted to question the capacity of the plaintiff to maintain the action against him. To hold that he may not do so collaterally in the suit against him and to also hold that he may not be heard in a direct proceeding for such a purpose, is to deny him all remedy and to the extent of that issue all protection of the law. Our

statute does not provide in terms who may be heard to resist the appointment of an administrator or to move to revoke the same; but it does provide that "in all matters of probate jurisdiction appeals shall be allowed from any final order, judgment or decree of the county court to the district court by any person against whom any such order, judgment or decree may be made, or who may be affected thereby." (Compiled Statutes, ch. 20, sec. 42.) Surely one who may appeal not only may, but must, as a foundation for the exercise of that right, be heard in the court of original jurisdiction to contest the order appealed from. Our statute is in this respect broad, and is to be distinguished from those which confine opposition in such matters to "persons interested in the estate," or "persons aggrieved by the order." A person interested in the estate is one entitled to or claiming some portion thereof. A person aggrieved by an order is in effect a person against whom such order has been made. Our statute uses the latter language and then extends the right to appeal to all persons who may be affected by the order. One who has been sued by a person whose sole right to maintain the action is based upon the order is certainly in any just sense of the term "affected thereby." The following cases directly sustain the view we have indicated: *Jeffersonville R. Co. v. Swayne*, 26 Ind., 477; *Estate of Mallory v. Burlington & M. R. Co.*, 53 Kan., 557; *Donaldson v. Lewis*, 7 Mo. App., 403. The cases cited in support of an opposite view in the opinion of Judge NORVAL are all readily distinguishable. In Massachusetts the statute confines the right to be heard to "any person aggrieved," and *Penniman v. French*, 2 Mass., 140, and *Swan v. Picquet*, 3 Pick. [Mass.], 443, are based entirely on a construction of that statute. Moreover, in Massachusetts the authority of the administrator may be collaterally attacked in a suit brought by him, on the ground of want of jurisdiction to grant the letters. (*Emery v. Hildreth*, 2 Gray [Mass.], 228; *Holyoke v. Haskins*, 9 Pick. [Mass.], 259.) *Labar v. Nichols*, 23 Mich., 310, was

founded and decided upon the same statute as existed in Massachusetts, and related to an appeal from the allowance of the account of an administrator. There was no question of the validity of his appointment. The appellant was interested only to the extent of a legacy of $10, which the order complained of ordered paid. He certainly could not appeal because the order gave him all that he claimed. *White v. Spaulding*, 50 Mich., 22, was a case where the decedent was domiciled in Massachusetts, and administration had been there granted. The widow resided in Massachusetts, but asked to have an ancillary administration in Michigan revoked. The application was not based on any claim of want of authority to grant the letters, and it was not shown that the widow had any interest whatever in any of the Michigan property. In *Augusta & S. R. Co. v. Peacock*, 56 Ga., 146, a case somewhat like the present, no suit had been begun by the administrator, and it was merely held that a person who simply apprehended that the administrator would sue him had no standing to ask his removal. Moreover, in Georgia also, the defendant in such an action may attack the authority of the administrator collaterally. (*Griffith v. Wright*, 18 Ga., 173.) In *Drexel v. Berney*, 1 Dem. [N. Y.], 163, the decision was based entirely on a construction of a statute confining the right to be heard to creditors "or persons interested in the estate," and another statute defined "persons interested" as those entitled either absolutely or contingently to a share in the estate. The court held that the statute was exclusive and did not permit a debtor to contest. *Chicago, B. & Q. R. Co., v. Gould*, 64 Ia., 343, was based upon a similar statute.

A sufficient reason for sustaining the right of the railway company to maintain this proceeding is derived from the fact that if, as is claimed, the county court of Otoe county was without jurisdiction in the premises and 'the grant of administration was void, then a judgment for or against the railway company in the damage suit would

be no bar to an action by the lawful administrator. (*Jeffersonville R. Co. v. Swayne, supra; McChord .v. Fisher's Heirs*, 13 B. Mon. [Ky.], 193.) In opposition to this view Judge NORVAL cites.*Roderigas v. East River Savings Institution*, 63 N. Y., 460, and *Chicago, B. & Q. R. Co. v. Gould*, 64 Ia., 343. The New York case was one where a man had been long absent and his mother made proof of his death and took out letters of administration on the faith of which the bank paid her a deposit of the supposed decedent. In fact, however, the man was alive. He died several years later, and administration was granted to his widow, who sued the bank for the deposit. It was held by a bare majority of the court that the bank was protected in its payment to the false administratrix. It is unnecessary here to comment at large on this class of cases. To the writer it seems that they are founded upon a confusion of ideas between jurisdiction depending upon the fact of death, or supposed proof of death. The idea that a man's property may be confiscated and distributed in his lifetime, and he forbidden to reclaim it by virtue of the fiction that the record of his death imports verity, and that he cannot as against it assert his own existence, is absurd to the reason and abhorrent to the conscience. The Iowa case we have already noticed begs the whole question by assuming that the grant of administration was voidable only and not void, because the railroad company attacked it directly instead of collaterally. Assuming that the appointment was voidable, it rightly holds that the administrator was one *de facto*, whose acts bound the estate until his authority should be revoked. How carelessly this case was considered is shown by the authorities it cites in support of its position. *Mutual Life Ins. Co. v. Tisdale*, 91 U. S., 238, held that in an action against a life insurance company on a policy the letters of administration upon the estate of the insured were not competent evidence of his death. It decided nothing else. *Cocke v. Halsey*, 16 Pet. [U. S.], 71, held that the decision of a court acting within its juris-

diction is binding until reversed. *Belden v. Meeker*, 47 N. Y., 307, held merely that letters of administration are sufficient *prima facie* to establish the capacity of the plaintiff to maintain an action as administrator as against a general denial in the answer. The other cases cited held that the acts of an administrator bind the estate when his appointment was erroneous or voidable merely, and distinguish between that case and a void administration. Herein, indeed, lies the distinction. If the county court of Otoe county was without jurisdiction the grant of administration was absolutely void, and not merely voidable.

This brings us to the question decided by the county court—the validity of the appointment. The statute provides (Compiled Statutes, ch. 23, sec. 177): "When any person shall die intestate, being an inhabitant of this state, letters of administration of his estate shall be granted by the probate court of the county of which he was an inhabitant or resident at the time of his death. If such deceased person, at the time of death, resided in any other territory, state, or county, leaving estate to be administered in this state, administration thereof shall be granted by the probate court of any county in which there shall be estate to be administered; and the administration first legally granted shall extend to all the estate of the deceased in this state, and shall exclude the jurisdiction of the probate court of every other county." It will be observed that there is a double foundation for the jurisdiction of a county court in such matters. A general jurisdiction is conferred to grant letters of administration where the deceased was an inhabitant or resident of the county at the time of his death. There is a further grant of power in cases where the decedent was not such an inhabitant or resident, but where he left estate in the county to be administered. Under the conceded facts Myers was not an inhabitant or resident of Otoe county or of the state of Nebraska. Therefore the administration must be founded upon his leaving

estate in Otoe county to be administered. There is in the transcript what purports to be a bill of exceptions, containing the evidence on which the county court acted, and it is claimed that this evidence discloses that he left a pocket-knife and a suit of clothes in addition to the articles described in the finding of the county court. At the time of the proceeding there was no authority to allow a bill of exceptions in such a case. (*Moline, Milburn & Stoddard Co. v. Curtis*, 38 Neb., 520.) But even if we might look into this evidence it does not disclose that the judgment of the county court was wrong in failing to find that he left any such property. Lewis was killed in a railroad wreck at Nebraska City. The suit of clothes was that which he wore at the time of the accident. The coroner testified that they were so injured as to be wholly without value. As to the knife, the evidence relates simply to a knife which he customarily carried. It was not found, and we hardly think that a county court would be justified in granting administration for the purpose of authorizing some one to search for a pocket-knife in the wreck of a railroad train; and administration so granted would have a very slender foundation if the knife should not be found. We therefore accept the finding of the county court that he left as his estate a pocket-book, $4 in money, and the right of action against the railway company. Were these, or any of them, "estate to be administered" within the meaning of the statute? As to the articles of personal property, the finding is that the $4 and pocket-book were at once sent to the widow at Kansas City, and that they did not come into the possession of the administrator until the day the order complained of was made. Administration partakes largely of the nature of proceedings *in rem*, and personal property may have in some cases a definite situs, but ordinarily it follows the person, and its situs is his domicile. If the property had remained in Otoe county, it may be that it would be sufficient whereon to found administration in that county, because we quite agree with counsel for the administrator

in their contention that in the absence of a statutory limitation the courts cannot grant or refuse administration merely because of the value of the estate to be administered, and whether the property is subject to the payment of debts, or, on the other hand, certain to be entirely consumed by the widow's allowance, does not affect the jurisdiction. In either event it must be administered. But before application was made for the appointment of the administrator the property had been delivered to the widow in Kansas City, Missouri. At the time administration was granted it was not in Otoe county. The widow was not there. There was neither property within reach of the administrator in that county nor a right of action other than the personal injury case which could there be prosecuted. What the estate had, if anything, was a transitory cause of action for the conversion of the property, or to replevy it, and this action must·be brought not in Otoe county, but where the property could be reached, or where the widow could be served with summons, to-wit, in Missouri. Where a decedent left personal property in New York which was reduced to possession by the domiciliary executor and removed from the state, it was held that the fact that the property was in New York at the time of the decedent's death did not confer jurisdiction upon the courts of that state. (*Townsend v. Pell*, 3 Dem. [N. Y.], 367.) It must be conceded that the right of property in an administrator vests by relation from the death of the decedent. It is because of this rule that the widow, had she refused to deliver the property to the administrator, would be liable in an action of trover; but it does not follow that the law establishes any fiction whereby property in a county at the time of the decedent's death is held to remain there, notwithstanding the fact of its removal. It is true that it is not for all purposes that personal property has its situs at the place of domicile; but when this is not true it is because the fiction yields to the fact when necessary to enable the court to obtain effective jurisdic-

tion.   As said by the supreme court of Mississippi, speaking to this point: "Personal property, whether of a tangible or an intangible character, is considered as located, for the purposes of administration, in the territory of that state whose laws must furnish the remedies for its reduction to possession.   *   *   *   For the purposes of administration, therefore, personal property is situated in that state in which it is found." (*Speed v. Kelly,* 59 Miss., 47.) The object, therefore, of departing from the fiction that personal property follows the domicile is to secure possession of the property, and the general rule should not be departed from for the purpose of founding a jurisdiction where the property cannot be obtained.   Again, there can be no reason for departing from the general rule with regard to such articles of apparel of strictly personal use as the decedent habitually carries upon his person.   The personal property which has its *situs* at a place other than the domicile is property of a substantive nature having no fixed connection with the person of the owner.   We have never heard until this case arose that the clothing on a man's back, the small coin in his pocket, and the trifling articles which he habitually carries upon his person, can give jurisdiction to administer his estate to the courts of a foreign state in which he happens to be traveling at the time of his death.

The most serious question is whether the cause .of action under Lord Campbell's Act was sufficient to sustain the jurisdiction of the county court.   On this the authorities are conflicting.   It is contended that the question has been settled in this state in favor of the jurisdiction, and on this point we are cited to *Burlington & M. R. R. Co. v. Crockett,* 17 Neb., 570, and *Missouri P. R. Co. v. Lewis,* 24 Neb., 848.   Neither of these cases determines the question.   In the first what was decided was that a petition in order. to show a cause of action under Lord Campbell's Act must disclose that there was a widow or next of kin entitled to the beneficial interest in the judgment.   In the second case an administrator had been

appointed in Washington county in this state. The de-
cedent met his death in Kansas, and this court held, fol-
lowing *Dennick v. Central R. Co.*, 103 U. S., 11, that where
the statute of one state gives a right of action for injuries
causing death, an administrator appointed in another
state may there maintain the action, the proceeds to be
distributed according to the law of the state where the
wrongful act was committed. It was incidentally held
that inasmuch as the statute gives a right of action to
the administrator, it follows that administration may be
granted for the purpose of maintaining the action. But
nothing was said as to the forum. It appears by clear
inference that the administratrix in that case had been
appointed in the county of the decedent's domicile, so
that jurisdiction existed by virtue of the first clause of
section 177, ch. 23, already quoted. The authority of
this case is rather in favor of an action brought in Mis-
souri by an administrator there appointed, than in favor
of an action brought in the county where the accident
occurred. The question is therefore an open one in this
state, and the authorities elsewhere are so conflicting
that we feel at liberty to adopt that view which seems
best supported by principle. (See, for instance, in favor
of the contention of the railway company, *Jeffersonville
R. Co. v. Swayne*, 26 Ind., 477, and *Perry v. St. Joseph &
W. R. Co.*, 29 Kan., 420; and as entirely supporting the
contention of the administrator, *Hutchins v. St. Paul, M.
& M. R. Co.*, 44 Minn., 5.) All the authorities agree that
a cause of action under Lord Campbell's Act is transitory
in its nature; although, until the decision of *Dennick v.
Central R. Co.*, *supra*, there was a conflict as to whether
the statute could be enforced outside of the state enact-
ing it. We feel bound by the decision in *Missouri P. R.
Co. v. Lewis*, *supra*, to hold that such a cause of action is
sufficient to warrant the granting of letters of adminis-
tration, although the proceeds of the action are not to
be distributed according to the usual course. But it
does not follow from this conclusion that such a cause

of action has its situs in the place where the injuries were inflicted or where death occurred, so as alone to justify administration in that county, where it is not the county of which the decedent was an inhabitant or resident. Conceding the full force of the Lewis case, it merely places such a cause of action on the same foundation as any other transitory cause of action. If such a cause has its situs in any place it would be the domicile of the plaintiff or that of the defendant, and not the county where the facts occurred creating the cause of action. In some states it has been held that a transitory cause of action against a resident of a county constitutes assets or estate in that county for the purposes of administration. But in those states the law does not permit a foreign administrator to sue. (*Pinney v. McGregory*, 102 Mass., 186; *Maysville Street R. & T. Co. v. Marvin*, 59 Fed. Rep., 91; *Brown v. Louisville & N. R. Co.*, 30 S. W. Rep. [Ky.], 639.) We think that such a state of affairs might fix the *situs* of a debt in such a manner that administration must be granted where it can be reached. But our statute provides that "An executor or administrator duly appointed in any other state or county may commence and prosecute any action or suit in any court in this state in his capacity of executor or administrator, in like manner, and under like restrictions, as a non-resident may be permitted to sue." (Compiled Statutes, ch. 23, sec. 337.) This language is very broad, and confers complete power upon a foreign administrator to maintain any action, subject only to the same requirements as exist in cases of other non-residents. In answer to this argument, the administrator contends that the law of Missouri would not permit a Missouri administrator to maintain such an action. But to this there are two answers. The law of Missouri does not appear in this record, and it will therefore be presumed to be the same as our own. (*Chapman v. Brewer*, 43 Neb., 890.) Again, it does not follow that the limitations upon an administrator's authority in Missouri would apply in an action

brought by him in this state under Lord Campbell's Act, and if such limitations would apply, it would seem that the defect is one arising from the laws of Missouri and which this state would be without power to remedy. We cannot see that the fact that the injuries were inflicted or that death resulted in Otoe county tend in any way to localize the cause of action. Indeed, all the authorities are to the contrary.

POST, C. J., RYAN and RAGAN, CC., concur in the foregoing dissenting opinion.